LOTTIE G. NORTON, APPELLANT, V. JAY H. BRINK, AP-
PELLEE.*

FILED JANUARY 18, 1906.   No. 14,093.

1. **Executory Contract: STATUTE OF FRAUDS.** The law is well settled
that a contract within the statute of frauds, while executory, is
not objectionable to the statute, but will be enforced when com-
pletely executed.

2. **Executed Contract: ACCOUNTING.** While not determining whether
a parol contract for the formation of a partnership to deal in land
is within the stautute of frauds and enforceable to the extent of
allowing one of the parties to assert an interest in the land which
was purchased under the agreement and the title taken in the in-
dividual name of one of the partners, it is *held* that, when the
agreement is fully performed by a sale of the land, an action may
be maintained against the partner who held title for an account-
ing for the profits realized.

3. The evidence of partnership in such case must be clear and satis-
factory, and of such character as to convince the court of the
existence of the partnership.

APPEAL from the district court for Buffalo county:
BRUNO O. HOSTETLER, JUDGE.   *Reversed.*

*John N. Dryden, E. C. Calkins* and *Lewis P. Main*, for
appellant.

*F. E. Beeman* and *H. M. Sinclair, contra.*

DUFFIE, C.

The petition in this case alleges that the plaintiff, who
was engaged in the real estate business, and one C. D.
Brink, father of the defendant, and who deceased prior to
the commencement of this action, entered into a parol
agreement of partnership for the purpose of purchasing
a certain half section of land in Buffalo county; that
Brink was to pay the purchase money and take title in his
own name, the plaintiff to reimburse him for one-half the

*Rehearing allowed.   See opinion, p. 575, *post.*

purchase price and 6 per. cent. interest thereon upon de-
mand; that the purpose of said partnership was to purchase
said land and share in the profits arising from the use and
subsequent sale thereof; that soon after purchasing it
Brink died, and the defendant, as his sole heir, sold said
premises and refused to account for her share of the
profits due her under said partnership agreement. The
defense is, in substance, the statute of frauds, and the fur-
ther plea of former adjudication arising out of the filing
by the plaintiff of a claim against the estate of C. D.
Brink, said claim being based on her alleged right to a
share of the profits.

The plea of former adjudication may be briefly disposed
of. After the death of C. D. Brink the plaintiff filed a
claim against his estate for her alleged share of profits
on the sale of this land. Before any action was taken upon
the claim, the probate judge was orally notified that plain-
tiff did not desire to press the claim in the probate court,
and to dismiss it. Judge Hollowell, on his examination,
testified as follows relating to the disposition made of the
claim: "I would say there never was any hearing on the
merits upon it in any way. Mr. Dryden, as attorney, filed
it, and later he said he would withdraw it or it could be dis-
missed. I don't just know the language he used, but there
having been a demurrer or objection filed to it, why, to
make it consistent, I thought I would make some order
upon it, as the claim and the order is labeled there 'Order
on Claims,' I just made that order dismissing or disallow-
ing the claim. There never was any hearing." It is
quite evident from this testimony that no hearing upon the
merits was had, and that what was done does not amount
to an adjudication and does not constitute a bar to this
action. The evidence is undisputed that C. D. Brink,
deceased, purchased the east half of section 30, township
10 of range 15, for $4,000 from one Tomlison, through
Warren Pratt, a land agent at Kearney. Pratt dealt
with C. D. Brink alone. Mrs. Norton had no part in the
negotiations for the purchase. She was not mentioned

in connection with the deal. Deceased paid for the land
out of his own funds by a check drawn on the City Na-
tional Bank, and obtained a deed from the owner. He
died seized of the land, and the defendant, Jay H. Brink,
as his sole heir at law, subsequently sold it for $6,400, less
commission. There is no contract in writing, no mem-
oranda or agreement of any kind relating to a partnership
between them or to the purchase of this land on partner-
ship account. It is true that this action being against
the representative of a deceased person, Mrs. Norton was,
under the provisions of section 329 of the code, incompe-
tent as a witness to give full evidence in the case, and
the court, upon the trial, rigidly enforced the provisions
of the statute against her testifying to any transaction
or conversation had between her and the deceased. To the
extent that she was disqualified from relating what oc-
curred between her and the deceased regarding any agree-
ment between them, she was placed at a disadvantage, and
had to rely entirely upon the evidence of third parties
having no direct interest in the controversy. This is a
disadvantage which the court cannot remedy or relieve,
and her case must stand or fall, judged alone by the evi-
dence which the law makes competent. If this evidence
can be said to fairly and fully establish a partnership be-
tween the plaintiff and the decedent with reference to the
purchase of this land, we have little doubt of her right
to recover in this action, as the plea of the statute of
frauds, as against an action brought, not for an interest in
the land itself, but for her share of the profits arising from
its purchase and sale, would have little force under the
law, as we understand it. Even those courts which have
held most strictly to the rule that a partnership agreement
for dealing in lands must be evidenced by writing, when
one of the partners seeks to assert an interest in land, the
title to which rests in the other partner, have practically
all agreed that a verbal contract, contemplating dealing in
lands and within the statute of frauds, while executory,
will be enforced where the terms under the agreement have

been completely executed before the commencement of the action. In the application of the statute of frauds the courts are now practically unanimous in recognizing a distinction in cases where a contract, void by the statute, has been fully executed, and one party seeks to retain the fruits of the dealing in defiance of his promise, and an action to enforce the agreement before full execution. Such an action is declared not to be within the purpose of the statute and not sheltered by its terms, and it has been held in a large number of decided cases that, where the parties have fully executed all parts of their agreement relating to or affecting interests in land, so that the courts are not asked to enforce anything with reference to the land itself, the rights and duties of the parties resulting from their dealings may be enforced, and each of them prevented from using that statute, not as a protection against, but as an effective means of, fraud. *Rice v. Roberts,* 24 Wis. 461; *Niland v. Murphy,* 73 Wis. 326; *Pireaux v. Simon,* 79 Wis. 392; *Trowbridge v. Wetherbee,* 11 Allen (Mass.), 361; *Bowen v. Bell,* 20 Johns. (N. Y.), *338; *Negley v. Jeffers,* 28 Ohio St. 90; *Bibb v. Allen,* 149 U. S. 481; *Smith v. Putnam,* 107 Wis. 155. The author of the notes to *Bates v. Babcock,* 16 L. R. A. 745 (95 Cal. 479), says in relation to the subject under discussion: "There is very little real conflict in the decisions upon this question. There are two lines of authorities each fairly consistent with itself and radically opposed to the other, which fact is caused, not by any conflict in principle, but by the different ends sought by the litigants. As a rule parol contracts for such partnerships are held valid, and all suits recognizing the existence of the partnership and seeking relief which may be legitimately sought by a partner are upheld, while on the other hand parol contracts for an interest in land are ignored, and suits brought to enforce them dismissed, although they may constitute a part of a partnership agreement."

As we view the case, the plaintiff's right of recovery depends entirely upon whether a partnership existed between

her and the decedent relating to this land. That no general partnership existed between them is conceded, and, if a partnership did exist, it went no further than a joint adventure in the purchase of this particular tract. The universal rule is that, where the question of partnership arises in a contest between partners and the interests of no third persons are involved, much stronger proof is required to establish it than when the question arises between the alleged partners and third persons. *Field v. Tenney,* 47 N. H. 513; *Smith v. Walker,* 57 Mich. 456; *Breckenridge's Appeal,* 127 Pa. St. 81. In a case of this character, where the alleged partner is dead and cannot speak for himself, and where it is sought to establish a partnership in land, the title to which stood in the name of the deceased and for which it is conceded he paid the whole consideration, it is quite evident that the proof required to establish the relation should be so clear and convincing as to fully satisfy the court that the relation existed. As we have heretofore intimated, there are many cases holding that parol evidence is incompetent to show that land standing in the individual name of one partner is partnership property in which the others have an interest, even though the partnership relation is wholly undisputed. "What safety would there be," say the courts holding this doctrine, "if the proposition were once established that, by alleging a partnership, the statute of frauds is entirely avoided, and the parties may then prove whatever interest in land they please by parol, against the absolute title of the deeds? What would hinder the separate real estate of any partner from being converted into partnership property, by proof of a mere verbal agreement? What would hinder the absolute title of any man, whether partner or not, from being changed into a trust estate in the same way? Nothing whatever. For the statute assumed that there were those ready, as the vice-chancellor said, to invade the rights of others by fraud and perjury. Let it be known, then, that a partnership avoids the statute, and all that would be necessary would be for the fraud and perjury to establish

that also, and then every title would be open to attack." *Bird v. Morrison,* 12 Wis. 153.

We recognize the full force of this reasoning, but still it cannot be denied that, where a partnership is conceded to exist, and where lands have been purchased with partnership funds, or where they are carried on the partnership books as part of the firm assets, all courts have recognized the interest of all partners in such lands, though the title may have stood in the name of one of the individual partners. As before stated, we incline to the view announced in *Smith v. Putnam,* 107 Wis. 155, that in cases of this character, where the agreement relating to the land has been fully completed and nothing remains to be done but to distribute the profits of a sale made, then the partnership relation may be established by parol, but we think that the parol evidence offered to prove that relation should be of the most convincing character.

With this statement of our views, we will now examine the evidence offered by the plaintiff on the question of her partnership relation with Brink, the decedent. This evidence is almost wholly in the form of admissions and declarations made by Brink previous to his death. G. S. Jones testified that about the last of August or the first of September, 1902, he spoke to the deceased about renting the Rice place (the name by which this farm was known), and spoke to him about fixing up the pasture and asked him what he was going to do with it; that Brink replied that he could not tell just how much he would put into the pasture, that he had a partner in the deal, and that after some further talk, when something about the house came up, Brink said: "Well, I don't know yet; my partner ain't here, but when she comes back here we will talk the matter over"; and finally he mentioned Mrs. Norton's name as his partner. "I spoke to him and said I understood Mrs. Norton and him owned it together, and he said: 'We do.' "

Philip Aultmeyer testified that Brink and Mrs. Norton drove to his place one Saturday morning about the last

of June, and they made several inquiries about the Rice farm—what kind of crops were on the place, and what rent was being paid; that Mrs. Norton and Brink were out to the place together two or three times; that on another occasion, when trying to rent part of the place, Brink told him that he could not act at that time, as another party was interested with him who was out of town; and that Mrs. Norton was out of town at this particular time.

R. M. Pruner, a carpenter, testified to a conversation in Mrs. Norton's office, while Mr. Brink was present. This conversation occurred sometime in the fall of 1902, and the witness says that "Mrs. Norton referred him (Brink) to me to do the work out on that place as a good man, and he said they was not just ready for it, or something to that effect; that was about all th t was said in the office at that time." By the court: "Go back and tell us just what they stated? I didn't understand. A. Mrs. Norton and Mr. Brink? Q. Just what did they say? A. Mrs. Norton referred him to me as a good man to do their work. Q. What did she say? How did she say it? A. She said: 'That is a good man to do our work out there on the farm.'" On being further questioned, he stated that Mr. Brink afterwards asked him if he could do the work. "I told him I was busy at that time and couldn't tell him just when I could do it. I did not do any work out there."

E. B. Finch testified as follows: "I met Mr. Brink up by W. A. Downing's, and he asked me if I had heard from Oliver Norton, whether he was better. He was sick up in Dakota. I told him I had not directly, but I had just been down to the house, and the girl had a letter, and he was better. He said to me that he was very sorry that Mrs. Norton was not at home, as there were things they were interested in together, and that some of the things he was afraid she would not be pleased with; and one thing led to another, and I said I was trying my best to get some building done out on the ranch, and he says: 'That is just my trouble, the carpenter we expected to have

out on the Rice farm to do that work we didn't get, and some of the bridges are not in up there, and he knew it would worry Mrs. Norton to death.' Then I said to him: 'You and Mrs. Norton are partners interested together in that farm?' 'Oh, yes.' And our conversation drifted on to building and what an awful time we were both having." On another occasion this witness heard a conversation between Mrs. Norton and Brink of which he testified in the following language: "Well, I don't believe that I could give it in detail, only in a general way. They were talking of the Rice farm, and of the necessary repairs that had to be made on the place. I know on one occasion when they were going out to the Rice farm together the next day, and they talked over the fact of the repairs that had to be done, and they had to go out and see about it. I think that is all I remember of it."

The deposition of Josiah L. Keck was read in evidence on the part of the plaintiff, and he testified to several conversations with Mr. Brink. The substance of his testimony is the following: "I had learned in some way of a purchase of his of a large farm there formerly owned by Hubbell and known as the 'Hubbell' farm east of Kearney, and he told me that he had purchased that farm, as well as another farm known as the 'Frank Rice' farm. This latter farm he said he had purchased for himself and Mrs. C. O. Norton in partnership. He stated that he was confident that farm lands would be better in Nebraska generally, and particularly in Buffalo county, because they were lower in price there, and that he had bought these farm lands believing that values would very materially increase, and the Rice farm, as I have said, was purchased by him for himself and Mrs. Norton, as he told me. I cannot recall anything particular beyond what I have stated, except that Mr. Brink said to me that he had advanced all the money in the purchase of the Rice farm, and Mrs. Norton was to pay him her half when she had sold the crops off of her other farms."

One other circumstance ought to be stated. Mrs. Nor-

ton detailed a conversation she had with the defendant in her office after the decease of his father. She said: "In a conversation in my office, Mr. Brink told me that his father left a complete list of all the land he owned, which he had sent to him, I think to Vermont or New Hampshire, wherever he lived; that the list included the Hubbell property, which he bought after he bought the Rice land, and that the Rice land was not in the list that his father had sent him." She detailed a later conversation with Brink in the presence of Mr. Beeman and Mr. Calkins in the following language: "I said that I thought that from the fact that the Rice land not being in the list of land that his father had furnished him, would be evidence of the fact alone that it was a separate matter, and would establish my claim to the partnership in the land or my interest in the land. I then said to Mr. Calkins that Mr. Brink had assured me that the Rice land was not included in any list he had, and that his father, when he bought the Hubbell land in the latter part of July, had sent him a memorandum of the farm. I turned to Mr. Brink and asked him if that was not true, and he said it was. Mr. Beeman then interposed an objection, and said he didn't know what he was talking about. Mr. Brink said he did know what he was talking about, because it was true that he had no list of the Rice land; that the list that his father had sent him east, where he lived, did not include the Rice land."

Whatever may have been the agreement between Mrs. Norton and the deceased, it is quite evident from the above evidence, which is wholly undisputed, that he recognized her partnership interest in the land in question. The witnesses, so far as we are able to judge from a reading of the bill of exceptions, were entirely disinterested and honest in the statements made. While recognizing the danger of establishing a rule which allows a partnership interest in land to be established by parol evidence, and wishing it understood that such evidence must be of the most satisfactory character, we do not see how, in this case, we can

come to any other conclusion than that the plaintiff has established her case by the quantum of evidence which the circumstances demand. It is not disputed that she and her husband were in the real estate business for many years prior to her husband's death; that on account of his infirmities she attended to outside matters, and had a thorough knowledge of the values of land in Buffalo county; that she was a woman of means and had an extensive credit at the banks, circumstances which explain what may be the unusual character of a woman dealing in real estate.

We recommend that the judgment of the district court be reversed and the cause remanded for an accounting between the parties.

ALBERT and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for an accounting between the parties.

REVERSED.

The following opinion on rehearing was filed December 7, 1906. *Former judgment vacated. Judgment of district court affirmed.*

1. **Partnership: EVIDENCE.** A parol agreement between two persons to purchase a single tract of land together, or "in partnership," where the purchase is finally made by one of them, who pays the whole of the purchase price, and takes the title to himself, the other simply agreeing to pay him one-half thereof on demand, does not create a partnership between such persons.

2. **Statute of Frauds.** Such a contract is within the inhibition of section 3, chapter 32, Compiled Statutes 1905, commonly called the statute of frauds, and is void.

3. **Trusts.** In such a case, no resulting trust arises in favor of one who contributes nothing to the payment of the purchase price.

4. **Reversal.** Former opinion herein, *ante*, p. 566, overruled.

BARNES, J.

This case was originally submitted to department No. 2 of the commission, and an opinion was written, filed and

announced, reversing the judgment below. See *ante,* p. 566. A rehearing has been allowed, the case has been reargued and submitted to the court, and the question now is, shall we adhere to our former decision? In order to determine that question, it is proper to set forth the contract sued on, which the appellant claims has been established by the evidence. The action was commenced by the appellant against Jay H. Brink, the son, and only heir at law, of one C. D. Brink, deceased, and the petition recites, in substance: "That the said plaintiff and said Brink, the deceased, entered into a verbal contract, wherein and whereby it was mutually agreed that the west half of section 30, township 10, range 15 west in Buffalo county, should be purchased in partnership, each party to pay one-half of the purchase money, expense of operating the same, and, upon sale, divide the profits or loss, as the case might be; that it was further agreed that said Brink should advance the entire purchase money, take the legal title in his name, and that plaintiff should, upon demand, reimburse the said Brink for half of the purchase price so advanced, with interest at 6 per cent. per annum." The petition further alleges: "That said premises were purchased for the sum of $4,000, said Brink paying the entire purchase price, the legal title being vested in the said C. D. Brink, as aforesaid.. \* \* \* That on the 30th day of November, 1902, and before any demand had been made for the repayment of the purchase money, and before any settlement had been had between the plaintiff and the said C. D. Brink in respect to said partnership, as aforesaid, the said C. D. Brink departed this life, leaving his son his sole heir at law, the defendant herein; that since the death of the said C. D. Brink, the plaintiff has at all times been ready and willing to pay her share of the said purchase money, and interest upon the same, but that the defendant refused, and continues to refuse, to accept the same; that on or about the 15th day of May, 1903, said defendant sold said premises for the sum of $6,400, and refused to recognize said partnership agreement, and refuses to pay the

plaintiff any portion of the profits realized upon the said land, as aforesaid." The petition concludes with a prayer for an accounting of the purchase money, for the rents and profits, and that the defendant be required to pay her the sum of $1,200 with interest from May 15, 1903, as her share of the profits realized from the sale of said lands. Upon the contract thus set forth the right of the appellant to maintain this action must stand or fall.

Her first contention, briefly stated, is that the contract established a partnership between herself and the deceased, and comes within the rule announced in *Dale v. Hamilton*, 5 Hare (Eng.), *369; *Richards v. Grinnell*, 63 Ia. 44; *Pennybacker v. Leary*, 65 Ia. 220, and other cases, which hold that a contract entered into for the purpose of speculating in lands is not within the statute of frauds and need not be in writing; that where the parties have contracted to engage in the venture of buying lands which are to be held in trust for both of them, and they are to have equal interests and shares in the common speculation, such agreement constitutes a partnership, and an action by one partner against the other for an accounting as to the partnership transactions may be maintained, although the partnership funds may be invested in land. While the authorities are divided on this question, we deem it unnecessary to express any opinion as to the soundness of this rule, because it seems clear to us that the agreement here in question is not embraced therein. It will be observed that nothing is said in this contract about entering into a general or special partnership, or that the purpose thereof was to sell the land for profit. Its language is: "It was mutually agreed" that said land "should be purchased in partnership." Buying land together does not make the purchasers partners, nor does the transaction constitute a partnership, with its rights, duties and obligations, as defined by law. "A partnership is the contract relation subsisting between persons who have combined their property, labor or skill in an enterprise or business as principals, for the purpose of joint profit." 1

Bates, Law of Partnership, sec. 1.   To constitute a partnership there must be a mutual agency, and a communion of profit and loss, and the parties must assume the partnership relation.   It seems clear to us that the contract to purchase the land in question as partners, conceding for the purpose of this opinion that such contract was established by the evidence, together with the purchase of the land by Brink, the deceased, and payment therefor with his own money, did not establish a partnership between the appellant and the deceased.   Again, the appellant did nothing upon her part, contributed nothing, risked nothing, and there was no consideration to support the contract.   It will be observed that, under the agreement, a sale of the land was not obligatory upon anyone.   In short, there is nothing in the contract that distinguishes it from the ordinary agreement of two or more persons to purchase land together, not for the profits of speculation on resale, but for the profits arising out of the ownership of the land itself, and this must be held to be the true meaning of the contract.   But, however this may be, there was no sale of the land by the alleged partnership; neither was there any sale of it by the deceased who, it is claimed, was one of the partners, and by his death the partnership, if one ever existed, was terminated.   The petition discloses that Brink died on the 30th day of November, 1902, and within five months after he purchased the land in question. After his death the partnership could not sell the land, because, if there ever was a partnership, it had then ceased to exist.   The appellant could not sell the land as a surviving partner, because, according to the theory advanced by counsel to support her case, she had no interest or estate therein.   At any rate, she had no title to convey.   Again, counsel has not pointed out to us any rule of law or equity that authorizes the appellant to maintain a suit for an accounting against the heir of her alleged deceased partner. It seems to us that this case falls within the rule announced in 1 Bates, Law of Partnership, sec. 302, where it is said: "A parol agreement by the buyer of lands to

admit another into partnership with him is void under the statutes of frauds, as not different from the contract of buyer and seller."

There is a clear distinction between the case at bar and those cases where a partnership was formed to deal or speculate in lands, and lands are bought with partnership funds, in pursuance of such an agreement. In *Levy v. Brush,* 45 N. Y. 589, it was held that a verbal contract between two parties by which one is to purchase land on joint account of both, and each to contribute a moiety of the purchase money, the title to be made to both, is void under the statute of frauds. In that case, the defendant bid off the land in his own name, and took a contract therefor, but refused to convey one-half of the contract to the plaintiff, and it was held that no action would lie to compel the execution of the agreement, because such an arrangement did not constitute a partnership between them; that the defendant had made no valid contract, and had a perfect right both in law and equity to refuse performance.

In our former opinion, *ante,* p. 566, it was said, on the authority of *Smith v. Putnam,* 107 Wis. 155, "that in cases of this character, where the agreement relating to the land has been fully completed and nothing remains to be done but to distribute the profits of a sale made, then the partnership relation may be established by parol," and the judgment of the trial court was reversed mainly upon that authority. It would seem that the learned commissioner who wrote the opinion overlooked the allegations in appellant's petition charging the defendant with refusing to recognize her rights, and with repudiating the alleged contract of partnership. Again, an examination of *Smith v. Putnam, supra,* discloses the fact that the contract there was an oral agreement between the plaintiff and the defendants that plaintiff should investigate desirable timbered lands, and, on defendants' approval, they would purchase, and either sell or log them. The agreement was that the plaintiff should take charge of the driving of the logs, which contemplated his rendering material and valuable services as

his contribution to the partnership funds. They entered upon the agreement, and the plaintiff did render services of value to the partnership. It was held that this agreement constituted a partnership, and, where the contract had been fully completed and executed, and nothing remained but to divide the profits, an action for an accounting and to recover such profits would lie. If the rule there announced could be applied in the case at bar, it could be applied to any case of oral contract to purchase land on joint account. If the transaction would otherwise be within the statute of frauds, it would only be necessary for the parties to stipulate that it should be a partnership, and the statute would be avoided. So we are constrained to hold that the contract here in question did not create or constitute a partnership.

2. Appellant next contends that, while the contract does not create an interest in the land in question, and therefore is not within the statute of frauds, yet by the agreement, and the facts relating to the purchase, a resulting trust was created in her favor; that by reason of such trust relation she acquired a half interest in the land, and is entitled to recover one-half of the profits arising from the sale thereof, from the defendant, who took the title to the land by inheritance. It would seem that her position is not maintainable. The fact that the appellant paid or contributed nothing toward the purchase price of the land is fatal to her contention. The rule is that, in order to establish a resulting trust of this class, it is necessary that the person paying the purchase money should have actually paid it as his own, as a part of the original transaction, at or before the time of the conveyance. The whole foundation of resulting trusts of this class is the ownership and payment of the purchase money by one, when the title is taken in the name of another. 10 Am. & Eng. Ency. Law (1st ed.), sec. 8; 2 Pomeroy, Equity Jurisprudence (2d. ed.), sec. 1,037. And we are not aware that the soundness of this rule has ever been seriously questioned.

In *Brooks v. Fowle*, 14 N. H. 248, it was said: "A pur-

chase of real estate completed on the credit of two and afterwards paid for wholly by one of them, does not, of itself, give rise to a resulting trust."

In *Hackney v. Butts*, 41 Ark. 393, it was held that, where no money is advanced, and there is nothing more in the transaction than is implied from the violation of a parol agreement, equity will not decree the purchaser a trustee. The rule of equity is that a resulting trust must have arisen at the time the purchase was made, and the money or consideration must have been paid, or secured to be paid, by such third party, at or before the purchase. *Mc-Elroy v. Swope*, 47 Fed. 380. The same rule has prevailed in this court since the decision of *Hoehne v. Breitkreitz*, 5 Neb. 110. In *Cameron v. Nelson*, 57 Neb. 381, Commissioner IRVINE said:

"Next, there are cases where two men join in the purchase of land, taking title in one, who is to resell and divide the profits. Such contracts are usually enforced, although not in writing, but it will be seen there is in such cases a resulting trust from contributing to the purchase money."

It is urged that the case of *Johnson v. Hayward*, 74 Neb. 157, sustains our former opinion. An examination of that case discloses that it was one where a person employed an agent to negotiate the purchase of certain real estate for him; that the agent, while acting as such, became himself the purchaser; and it was held that he should not be permitted, without his principal's knowledge and consent, to become the purchaser of the same property for himself, and, if. he makes such purchase, he will be considered as holding the property in trust for his principal. So, it seems clear that the rule there announced has no application to the facts in the case at bar. We are therefore of opinion that the contract, the purchase of the land, and the facts surrounding the transaction were insufficient to create a resulting trust in favor of the appellant.

Counsel for the appellee insists that the appellant's right to recover has been adjudicated by the county court of

Buffalo county, in the matter of the claim filed by her against the administrator of the estate of C. D. Brink, on account of the purchase of the land in question, adversely to such right; that the judgment in that case is a bar to her right to recover in this action. We deem it unnecessary to determine that question, because we are constrained to hold: First, that no partnership was created by the transaction in question between the appellant and the deceased, C. D. Brink; that the contract relied on by the appellant is within the inhibition of section 3, chapter 32, Compiled Statutes 1905 (Ann. St. 5952), commonly called the statute of frauds. Second, that no resulting trust in favor of the appellant was created thereby. It also seems clear that, in order to maintain this action against the heir of the deceased, appellant must have had an interest in the land in question, which she could follow into his hands, and either compel him to convey to her her interest therein, or account to her for the profits arising from the sale thereof. For the want of such interest, as well as for the other reasons above stated, she cannot maintain this action.

Our former judgment is therefore vacated and the judgment of the district court dismissing the appellant's cause of action is affirmed.

JUDGMENT ACCORDINGLY.

LETTON, J.

I concur in the conclusion reached. I think the action cannot be maintained for two reasons:

(1) Granting that the relation between the plaintiff and the deceased was a partnership relation, the plaintiff's interest was not in the land itself, but in the profits derived from the transaction. This was a personal liability of the deceased, and, consequently, a liability of his estate, for which the administrator was answerable out of the estate. To hold that the plaintiff could follow the land itself would be to say that the alleged oral contract gave her an interest in the land, which would be obnoxious to the statute

of frauds. If the alleged partnership had been to deal in live stock or merchandise, the title to which was taken in the name of the deceased, his estate would be liable to account to the other partner. The fact that the property, which is alleged to have been the subject of the partnership, was real estate does not change the rule. It is not the property itself, but her interest in the profits derived from the same, which the plaintiff is seeking to recover, and this, in my view, is the only theory upon which she may maintain such an action. *Everhart's Appeal,* 106 Penn. 349; *Bunnel v. Taintor,* 4 Conn. 568; *McElroy v. Swope,* 47 Fed. 380.

(2) The plaintiff properly filed her claim in the county court of Buffalo county against the estate for her share of the profits. A demurrer to this claim was filed, was sustained by the county judge, and her action dismissed. No appeal was taken, and this judgment stands in full force and effect. The county judge testified, in substance, that the attorney for plaintiff said he would withdraw it or it could be dismissed, but that, a demurrer or objection having been filed, he thought he would make some order upon it, and he made the order dismissing or disallowing the claim; that there never was any hearing upon the merits. This testimony is not sufficient to vacate, set aside or annul the adjudication of the claim, as shown upon the records. If the judgment was inadvertently rendered or made by mistake, the plaintiff's remedy was to have it set aside by the means provided by law for that purpose. Until this is done, it stands as an adjudication, and cannot be obliterated by parol testimony, either of the judge who rendered it or of any other individual. As it now stands, it finally adjudicates the plaintiff's claim against her, and she cannot maintain another action upon the same cause.