HIRAM RICE v. STEPHEN V. PARROTT.*

FILED MAY 3, 1906.   No. 14,239.

1. **Contract**: STATUTE OF FRAUDS. An oral contract, upon sufficient
   consideration, to divide the profits of a purchase and sale of land
   is not affected by the statute of frauds and is valid and enforce-
   able.

2. ——: REPUDIATION: ACTION. An express repudiation and denial
   of such a contract by the party having the title will give rise to
   a cause of action at law for damages.

3. **Appeal**: MOTION FOR NEW TRIAL. An appeal to this court without
   the execution of a supersedeas bond is not a waiver of a pending
   motion for a new trial in the district court, and it does not de-
   prive the latter court of jurisdiction to grant the motion.

ERROR to the district court for Boone county: JAMES N.
PAUL, JUDGE. *Affirmed.*

*Charles Riley* and *H. C. Vail,* for plaintiff in error.

*J. A. Price, Reeder & Hobart, I. L. Albert* and *J. J. Sul-
livan, contra.*

AMES, C.

The facts established, as we think, by a clear preponder-
ance of the evidence in this case are that in March, 1899,
Rice and Parrott entered into an oral agreement to the
effect that the former should purchase with his own funds,
and take to himself a conveyance of a certain tract of land,
and that in consideration of certain acts and services per-
formed and to be performed by Parrott in the procuring
of the purchase and in looking after and caring for the
land, the net profits of the transaction, when the land
should be sold, should be equally divided between the par-
ties.   It is not clear that any specific date upon which the
sale should be made was agreed upon although there is
some conflict in the evidence in that regard, but the point

* Rehearing allowed.  See opinion, p. 505, *post.*

is in this case immaterial because the law, in the absence
of stipulation, implied a reasonable time. The purchase
and conveyance were made for a consideration of $4,000
paid by Rice. Parrott, having, after the lapse of some
time, made an ineffectual demand upon Rice for a sale of
the land, procured a purchaser for it himself at an agreed
price of $7,400 cash, and prepared a deed to the intended
purchaser, which Rice refused to execute, and he also
repudiated and denied any interest in the transaction on
the behalf of Parrott, who is not shown to have been in
any respect in default in the keeping of his part of the
agreement. In October, 1901, two and a half years after
the purchase of the land, Parrott begun this action ap-
parently for a specific performance and for an accounting.
The original petition is not in the record. A trial to the
court resulted, on May 1, 1903, in a judgment of dismissal
without prejudice to a new action at law. Within three
days Parrott filed a motion for a new trial which the court
took under advisement and decided at a subsequent term,
on November 17, 1903, by granting the application. In
the meantime, and just before the expiration of the six
months' period of limitation, Parrott filed and docketed an
appeal in this court, but without the execution of a su-
persedeas, and immediately after the granting of his
motion for a new trial he voluntarily dismissed his appeal.
He, thereupon, by leave of court, filed an amended petition,
also praying an accounting and specific performance.
Issues were made up, and as the result of a trial to the
court, without a jury, the plaintiff recovered a money
judgment for $2,100 and costs of suit, which the defendant
seeks to reverse by this proceeding in error.

It has been argued at considerable length, both orally
and by brief, that by docketing his appeal in this court the
plaintiff below waived his then pending motion for a new
trial, and that his subsequent dismissal of the appeal
operated as an affirmance of the judgment of the district
court dismissing the action, and deprived the latter men-
tioned court of jurisdiction. This contention is predicated

upon two grounds: First, upon the doctrine of the election of remedies, and it is said that the plaintiff, having elected to review the former judgment by appeal and actually begun proceedings to that end, could not afterwards abandon them and proceed at law by urging the motion for a new trial. But this is putting the cart before the horse. If the doctrine of the election of remedies were applicable, the plaintiff by filing his motion for a new trial elected to proceed at law, and waived his remedy in equity by appeal, which latter not only had he a right to abandon, but this court, upon the matter being brought to its attention, would have deprived him of by dismissal. But such has never been regarded as the law in this state, and, ever since the organization of its courts, parties have universally enjoyed the liberty of completing their records by obtaining rulings upon motions for new trial in equity causes, and afterwards appealing, and subsequently, if they chose, of abandoning the appeal and proceeding by petition in error.

The second ground is that the appeal vacated the judgment of the district court and deprived it of jurisdiction over the cause by transferring the entire controversy to this court. Although in some respects and for some purposes an appeal has such an effect, it cannot be said to have it unqualifiedly in all cases and in all regards, for, otherwise, the mere docketing of an appeal would operate as a supersedeas and dispense with the necessity for the undertaking prescribed by the statute upon the subject. That statute must itself be regarded as an express legislative enactment that the judgment shall, in the absence of the undertaking, retain its vitality and be capable of execution during the pendency of the appeal, and this court has held that even after supersedeas has been effected it may, for sufficient cause, be set aside and the judgment of the lower court restored to its original *status* and enforceability. *Tulleys v. Keller,* 42 Neb. 788. As we have pointed out no supersedeas was given in this case, and the judgment for costs remained enforceable against the

plaintiff until it was vacated by the order granting the motion for a new trial, and a like condition could have existed, of course, if the judgment had been in favor of the plaintiff and the situation of the parties had been reversed. It follows, we think, as a necessary consequence, that the district court retained its jurisdiction over the judgment, and of process and procedure founded upon it, and if its power to vacate it, in all respects as it would have done if no appeal had been taken, except that it could not interfere or impair the procedure in this court so long as the judgment remained in existence.

We are therefore concerned only with the sufficiency of the pleadings and evidence to sustain the judgment of the district court about which we have no doubt. It is urged, with some earnestness, that in the absence of a writing no estate or interest in the land was created and that an action for a specific performance of the agreement to make sale of it will not lie. But this question need not now be decided. It has been held by this court that an oral contract, upon sufficient consideration, to divide the profits of a purchase and sale of land is not affected by the statute of frauds, and is valid and enforceable. *Harris v. Roberts,* 12 Neb. 631; *Cameron v. Nelson,* 57 Neb. 381; and such seems to be the current authority elsewhere. *Holmes v. McCray,* 51 Ind., 358; *Richards v. Grinnell,* 63 Ia. 44; *Coward v. Clanton,* 79 Cal. 23, 21 Pac. 359; *Meagher v. Reed,* 14 Colo. 335, 24 Pac. 681. *Harris v. Roberts, supra,* was, in essential features, not unlike this, the action being at law for damages for breach of an oral contract to convey. Whether in that case or in this a specific performance of the agreement could have been decreed has not been decided and need not be. In neither case could the party who held the title, after having repudiated his agreement and refused to convey, retain both the land and the consideration for which, in part, he obtained it. If he retains the former no statute excuses him from his obligation to return the latter, with such sum in addition thereto or

substitution therefor, by way of profits, as he promised to make. This conclusion is in harmony with *Norton v. Brink*, 75 Neb. 566. It was there decided that after such a contract has been executed by a sale of the land the statute of frauds is not a bar to an action to compel its performance by a division of the proceeds. It follows, of necessity, that the statute is not a bar to an action at law for damages for a breach of the contract by refusal to make a sale. That Rice was guilty of a breach of his contract cannot be successfully disputed. The action, though in form for specific performance, proceeded as one at law and resulted in a judgment for money only. There was no objection to the jurisdiction of the court in equity, and no demand for a jury to try the issue of damages, and it is not claimed that the amount of the recovery is excessive.

We are of opinion that no reversible error has been committed, and recommend that the judgment of the district court be affirmed.

OLDHAM and EPPERSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be .

AFFIRMED.

The following opinion on rehearing was filed April 4, 1907. *Judgment of affirmance adhered to:*

Contract: STATUTE OF FRAUDS. An oral agreement whereby one of the parties thereto is to look up and negotiate the purchase of such land as can be bought and sold at a profit, to take charge of, rent, improve and procure purchasers therefor, the titles to be taken in the name of the other party, who agrees to furnish the amount of money necessary to carry on the business, the net profits of the venture to be equally divided, is not within the statute of frauds.

BARNES, J.

The plaintiff below had judgment, and defendant prosecuted error. By our former decision the judgment of

the district court was affirmed. A motion for a rehearing was sustained, and all of the questions presented by the record have been reargued to the court. For a full statement of the facts underlying this controversy reference may be had to our former opinion, *ante,* p. 501. The first trial in the district court resulted in a judgment dismissing the plaintiff's action without prejudice. A motion for a new trial was filed in due season, but no ruling was had thereon until more than six months after the judgment was rendered; and plaintiff, as a matter of precaution, lodged a transcript in this court and had his appeal docketed. The motion for a new trial was finally sustained, and thereupon plaintiff was allowed to dismiss his appeal.

It is again strenuously contended by counsel for the defendant below that plaintiff waived his pending motion for a new trial by filing a transcript and docketing an appeal in this court; that his subsequent dismissal of the appeal operated as an affirmance of the judgment of the court dismissing his action and deprived that court of jurisdiction. On this question, by our former opinion, we ruled against the defendant. On a reexamination of the matter we are satisfied with that ruling. We find that in the recent case of *Henry v. Allen,* 147 N. Y. 346, it was held that the taking of an appeal and its pendency does not prevent the trial court from sustaining a motion for a new trial, and it was said in that case by the court of appeals:

"We have heretofore pointed out that upon an appeal to this court the record itself is not transmitted to us, but a transcript thereof, and the case for all general purposes still remains in the court of original jurisdiction. *People v. Board of Education,* 141 N. Y. 86. In the above case we said: 'In all matters pertaining to the appeal itself and to the proper hearing thereon this court has jurisdiction, and also in regard to all applications which by statute may be made to this court after the taking of the appeal, but as to all other applications the case is

regarded as still pending in the court of original juris-
diction, and such applications should be made to that
court.' * * * If the supreme court, in the exercise of
its discretion, grants the motion for a new trial, the legal
effect will be the vacating of the judgment from which
the appeal has been taken to this court, and a motion to
dismiss the appeal would then be proper."

So, both on principle and precedent, our former judg-
ment on this point was right and we adhere to it.

The second contention, and the one most relied on for a
reversal of the judgment of the trial court, is that section
3, ch. 32, Comp. St. 1905, commonly called the statute
of frauds, is a bar to plaintiff's right of recovery herein.
The facts stated in plaintiff's petition and found by the
trial court are, briefly stated, as follows: On or about
the 30th day of March, 1899, the plaintiff and defendant
entered into an oral agreement by which the defendant
was to furnish all the money necessary to conduct the
business of speculating in real estate, was to take and
hold in his own name the title to such land as should be
purchased until the same could be sold at a fair and rea-
sonable profit above the original investment, and he was
then to convey the same to the purchasers. It was agreed
that the plaintiff, being a dealer in real estate, should look
for and procure such lands as in his judgment could be
bought and sold again at a profit, should cause the title
thereto to be conveyed to the defendant, should seek for
and procure purchasers for such lands, and should sell the
same when a profit could be realized upon the original
investment. He was also to have the general oversight,
care and management of such real estate as might be
bought and sold. He was to attend to renting the same,
and to threshing, dividing and marketing the crops grown
thereon; and when he procured a purchaser at a fair and
reasonable profit the defendant was to convey the lands to
such purchaser, and the proceeds of the sales were to be
divided as follows: The defendant to be paid the amount
of his original investment; the remainder, together with

the income from the land, was to be equally divided between the plaintiff and defendant, after deducting taxes and expenses. It appears that in pursuance of the agreement the plaintiff purchased two tracts of land; one known as the Stangland farm, and the other as the Copson land, and had them conveyed by good and sufficient title to the defendant; that he thereupon took charge of the property, rented it, improved the Copson farm by hauling about 100 loads of manure thereon; that he looked after the division of the crops, and finally, a short time before this action was commenced, procured purchasers therefor at fair and reasonable prices, at a good profit over the original investment, and demanded that the defendant should convey said real estate to such purchasers. The defendant refused to comply with this request, and refused to pay the plaintiff his share of the profits which could have been realized upon such proposed sales.

It appears that contracts of this kind have been quite uniformly upheld by the courts of this country. In *Carr v. Leavitt,* 54 Mich. 540, the facts were similar to those in the case at bar. There the defendant, desiring to purchase certain lots in the city of Detroit, procured the services of the plaintiff in bringing about such purchase, and it was agreed that the plaintiff should employ his time and services in and about the purchase of said property at a price fixed between the plaintiff and defendant, and in and about the management of said property; that the defendant would furnish the means necessary to make the purchase, and upon the sale and disposition of the property so purchased the defendant would pay the plaintiff one-half the profits realized upon the sale over and above the price paid therefor. The plaintiff performed the services, and purchased the property for $37,000, which was the price agreed upon. The property was conveyed to the defendant, and later on was sold for $52,000, and the defendant, on demand, refused to account to or pay the plaintiff one-half of the profits realized on the sale. It was admitted that the alleged contract was not in writing, and

the defendant took the objection that the contract was void
under the statute of frauds. The trial judge held the ob-
jection well taken, and directed a verdict for the defendant.
The case was appealed to the supreme court and upon the
foregoing facts Cooley, Chief Justice, speaking for the
court, said:

"If the contract the plaintiff relied upon was within the
statute, it must have been because it contemplated a pur-
chase and then a sale of certain lands. But the plaintiff
was to be neither purchaser nor seller, and the contract
did not contemplate that in any contingency an interest
in the land was to be conveyed to or vested in him. It con-
templated only that in a certain event the plaintiff should
receive a share of the moneys that a sale of the land should
bring. His interest was therefore in these moneys, and
not in the land itself. And the moneys were to be payable
to him in consideration of services performed. The profits
on the two trades, to be brought about by the plaintiff,
were to be taken as the measure of compensation, instead
of any other that might have been agreed upon. This
surely was not a contract 'for the sale of any lands or any
interest in lands,' within the meaning of the statute of
frauds. How. St., sec. 6181. That statute contemplates
a transaction between parties contracting with each other
as principals; and this was not such a transaction. In
this case plaintiff as agent undertook to perform for the
defendant certain services, and the defendant undertook
to make a compensation therefor, the amount of which
should be contingent on the value of the services. It was
assumed in *Bunnel v. Taintor's Adm'r*, 4 Conn. 568, that
such a contract was not within the statute, and there are
many express adjudications to the same effect."

We approve of the rule announced in that case, and the
reasoning of the learned chief justice supporting it. As be-
fore stated, nearly all of the courts of this country have up-
held contracts like the one here in question. Some of them
on the ground that the contract is one of partnership for
the purpose of speculating in real estate; others holding

that the contract is one for profit-sharing only; and still others, on the ground of compensation for services, as set forth in the opinion just quoted from. *Richards v. Grinnell*, 63 Ia. 44; *Brosnan v. McKee*, 63 Mich. 454; *Snyder v. Wolford*, 33 Minn. 175.

It is further contended that an affirmance of the judgment of the trial court commits us to a rule inconsistent with our last opinion in *Norton v. Brink*, 75 Neb. 575. It seems clear, however, that such is not the case, for the two cases are easily distinguishable. In *Norton v. Brink*, to avoid the statute of frauds, it was alleged that by the contract the land in question was to be purchased in partnership, and held for joint profit by the plaintiff and defendant. Nothing was said as to when it should be sold, if at all. It appears that Brink purchased the land himself, paid the full consideration therefor, took the title in his own name, and died without having sold it. His son, who inherited his estate, sold the land at a profit, and suit was brought against him to declare a resulting trust and for an accounting as to the proceeds of the sale. It was there held that the facts did not create the relation of partnership, and as the plaintiff had contributed nothing to the enterprise, and had paid no part of the purchase price, no resulting trust arose in her favor.

In the case at bar the plaintiff makes no claim to an interest in the land; neither does he allege the existence of a partnership. His claim is based on his right to recover one-half of the net profits of the transaction as his compensation for his services contributed to the joint enterprise. His evidence not only sustains this claim, but the defendant has in two letters written by himself to the plaintiff acknowledged the existence of such claim; and those letters were properly received in evidence against him. In one of them he says: "Yes, Parrott, I always keep my word. You are to have one-half the profits in the above farm when sold, and the same in the Copson farm. Of course, this is after the expenses are deducted, provided the income on

them does not meet expenses." In the other letter, among other things, he said: "We must get all we can out of the place until a good price is given for it." This is a case where the establishing of the debt does not involve the establishing of an interest in the land itself. And, when the action concerns only the purchase money for the execution of the conveyances, of course the promise does not seek to create a trust, and is enforceable. *Harris v. Roberts*, 12 Neb. 631; *Cameron v. Nelson*, 57 Neb. 381; *Linscott v. McIntire*, 15 Me. 201; *Hess v. Fox*, 10 Wend. (N. Y.) 436; *Snyder v. Wolford, supra; Smith v. Putnam*, 107 Wis. 155.

For the foregoing reasons, we are satisfied that our former conclusion on this point was right. As the foregoing are the only questions presented for our consideration on the rehearing, our former judgment is adhered to.

AFFIRMED.