PHILIP H. KOHL, APPELLEE, v. COLUMBUS R. MUNSON ET AL., APPELLANTS.

FILED OCTOBER 30, 1914.   No. 17,804.

1. Statute of Frauds: PAROL EVIDENCE: JOINT UNDERTAKING.   Where the plaintiff and two other men endeavored in association with each other to procure a purchaser for a certain tract of land at a price satisfactory to the seller, and he accepted their services, and each contributed time and labor to the common plan and assisted in its execution, in an action by the plaintiff against the other two to recover his share of the profits of the transaction, the relation of the parties may be established by parol, and the provisions of section 3, ch. 32, Comp. St. 1911, do not apply to such persons, or determine the relations between them. *Stewart v. Mather*, 32 Wis. 344.

2. Appeal: CONFLICTING EVIDENCE.   In such case, where the parties failed with their first proposed customer to consummate a sale, but succeeded with their next one, and there is a conflict of testimony as to whether the plaintiff participated in making the sale to the second customer, it is for the jury to find the facts, and their verdict will not be disturbed if there is evidence to support it.

APPEAL from the district court for Wayne county:. ANSON A. WELCH, JUDGE. *Affirmed.*

*I. J. Dunn,* for appellants.

*A. R. Davis* and *F. S. Berry, contra.*

HAMER, J.

There was a verdict for the plaintiff for $1,000, and judgment thereon against all the defendants. The defendant Munson appeals. The plaintiff, Philip H. Kohl, alleged in his amended petition, filed in the district court for Wayne county, that he was an experienced real estate man living at Wayne, Nebraska, in the year 1906; that he was acquainted with real estate values in Hand county, South Dakota, and with persons in that territory; that one Robert Fullerton' owned a tract of 2,740 acres of land in that county; that at the request of the defendants he entered into an agreement with them, whereby they and he were to attempt to secure from said Fullerton authority to sell said land; and that in case of the sale thereof, or any part of it, the profits were to be divided between the plaintiff and defendants each to receive one third; that in case only a part of the land was sold, and it should be found necessary in order to consummate the sale, the plaintiff would take an equal share in the remainder of the land with each of said defendants; that the plaintiff and defendants secured authority from Fullerton to sell the land, Fullerton to receive $15 net an acre, and the plaintiff and defendants to have all over that amount; that Fullerton agreed to take back a mortgage on the land in case of a sale for $20,000, the same to be prorated over it in small tracts; that thereafter plaintiff and defendants sold two-thirds of the land to one Charles Shultheis for $18 an acre, whereby they made a profit of $5,480, which sum was paid to and received and retained by the defendants; that the defendants without any sufficient cause refused to pay one third of this sum, or any part of it, to the plaintiff; that the plaintiff performed his part of the agreement; and that it was not found necessary to take any interest in any part of the

land in order to consummate the sale to Shultheis; that two-thirds of the said land had been conveyed to said Shultheis by said Fullerton, the owner, and by warranty deed which had been recorded. A demurrer to the said amended petition was interposed by the defendants and was overruled.

The defendants then answered, setting up: (1) A general denial; (2) that the contract set up was void under the statutes of Nebraska and South Dakota, and in contravention of the statute of frauds of each of said states; that no contract in writing was ever made or executed by either the plaintiff or the defendants between themselves, or between themselves and the owner of the land in controversy. Sections 1311 and 1770 of the civil code of South Dakota are pleaded. The following facts are also stated in said answer: That Munson obtained Fullerton's price for said land, being $15 an acre net; that Fullerton then agreed with Munson that he could have all he could make above that sum; that Munson and the plaintiff talked about said land and the price therefor, and agreed orally to try and interest one Henry Kellogg and R. Phileo of Wayne, Nebraska, in buying said tract jointly with them; that said Kohl agreed to buy a one-fourth interest for the purpose of inducing the said third party to engage in purchasing said land; that plaintiff and defendant Munson went to South Dakota, and there saw Fullerton and arranged with him to ask $18.50 an acre for the land in pricing it to the said parties, and the plaintiff and defendant Munson agreed that, if the land was sold, the difference between $15 and $18.50 an acre, $3.50, should be applied by them and by said Kellogg as a partial payment upon their several interests in said tract; that said Fullerton refused to enter into a written contract to sell an option on the land; that when Phileo and Kellogg looked over the land they refused to buy it; that all parties to this suit then stated to Fullerton that they would not buy the land; that thereupon Fullerton withdrew his offer to sell the land, and said that he would sell it to other parties who were then waiting to buy; that no other agreement or

arrangement was ever had concerning said land between plaintiff and defendants; that the plaintiff had nothing to do with the sale of the land to Shultheis, and did not offer to take any interest in the same, and it was not taken by Shultheis; that Shultheis did not offer to pay any share of the money necessary to buy the remaining one-third of the land, and that he did no act of performance whatever concerning the said sale; that about 30 days after the parties saw Fullerton, defendant Munson learned that said land had not been sold, and thereupon he showed said land to Mr. Shultheis, who bought one-half thereof; that defendants Munson and Kellogg bought the remaining one-half, and without Kohl's knowledge or cooperation; that the sum of $3 an acre received from Shultheis above the price to Fullerton was applied by defendants as a part payment upon said lands received by them. There was a reply, which is substantially a general denial, and alleges no new matter which is material.

On the trial it was objected by the defendant Munson that the petition failed to state a cause of action against him; also, that there was a misjoinder of causes of action, for that the plaintiff contended that he entered into a partnership contract with the defendants and was entitled to one-third of the commission, and that if the plaintiff had any cause of action it was against *each defendant* for his *individual share,* and not a joint cause of action against the two defendants, and that Munson should pay no part of Kellogg's share. Kellogg made the same sort of objection. Both objections were overruled.

When the plaintiff rested, the defendants each moved for an instructed verdict, because (1) the contract between Munson, Kellogg and Kohl was that each should acquire an undivided interest in the land if they should sell or secure the sale of less than the title interest to a third person; that the sale to Shultheis and Kellogg was for a title consideration of $50,000, $41,325 being the net price which it was agreed should be paid to Fullerton; that under the contract Kellogg did purchase from Fullerton one-half or one-third of the land, and took in his

own name a deed for an undivided one-third interest; (2) no commission payable in cash resulted from the transaction, even under the testimony of the plaintiff; that neither Munson nor Kellogg was financially indebted to the plaintiff, and the only right of either was an interest in the land or in that portion of it which was deeded to Kellogg; (3) that the contract was an oral contract for the acquisition of an interest in the land, and void under the statute of frauds, and not enforceable under the laws of Nebraska or South Dakota. Each motion was overruled.

The plaintiff testified to living in Wayne about 21 years; that his occupation was real estate and loans, in which he had been engaged about 12 years; that he was acquainted with the defendants, Columbus R. Munson and Henry Kellogg, having known them about 20 years; that Munson was engaged in what is known as "curbstone real estate;" that Kellogg was a retired farmer and also a dealer in real estate; that the plaintiff had had dealings with them in real estate prior to the present transaction; that in September, 1906, the plaintiff had talked with the defendants with reference to a tract of land in South Dakota; that his first conversation was with Kellogg alone, and about three months later he talked with Kellogg and Munson together; that Kellogg informed him that C. R. Munson, through one L. C. Tredway of Huron, had located a tract of land in the western part of Hand county, South Dakota, some 2,740 acres; that this land was owned by Robert Fullerton; that it could be bought for $15 an acre, and that a good sized mortgage could be "carried back" on the land; that Kellogg at that time had in view Mr. Phileo, to whom they expected to sell a one-half interest at $17 an acre, and that they wanted to know of the plaintiff, Kohl, if he would go in with them and help them to carry the other half interest. Kohl testified that he figured the matter over, and then said he would not go into the deal unless he could raise the price of the land to $18.50 an acre; that they could afford to go into it then if that was done; that they talked the matter over, and finally all agreed that they would try to get the price of

the land raised to $18.50 an acre; that the outcome of the whole talk was that they were to carry a half interest together, or whatever interest it was necessary to carry, provided they could make a sale; Kohl testified that after they agreed to go in on this deal at $18.50 an acre Kellogg said he would go and get Mr. Munson. Munson testified that Kellogg said to him what he thought of the deal and how to handle it. Kohl testified that he told Munson the only way would be to raise the price of the land; that after the talk Munson was just as willing as Kellogg, and that they agreed to go to Wessington in advance of Mr. Phileo and *get the price of the land raised,* which was done. The plaintiff testified that it was agreed to divide the profits so each would receive a third, and that Kellogg said, "You had better go, Phil; take time; you understand these things a little better than Munson does; you can go along and explain matters, and Munson will be there as a witness;" that they then went to Wessington, and out to the Fullerton ranch, where they took dinner with Fullerton, and Fullerton agreed to raise the price of the land to $18.50 an acre, and also agreed that the land should be taken with a $20,000 mortgage against it, the same to be proportioned off on the different quarter sections or half sections. After this Kohl and Munson had certain negotiations concerning the details of the transaction, all the parties participating. All the parties testifying agreed that Tredway was to have $500, and Fullerton understood this arrangement. Fullerton testified that when Munson came to his ranch with the plaintiff he "introduced him as a partner of his interested in this deal, and they came out to see it." The evidence was conflicting. The jury found in favor of the plaintiff, and there is sufficient evidence to sustain the verdict. It must be considered, therefore, that the allegations of the petition have been established as the true facts in the case. It is therefore unnecessary to detail the evidence at length.

It is contended by the defendants that this case is ruled by *Norton v. Brink,* 75 Neb. 575. We have carefully read the entire bill of exceptions, and there is a substantial dif-

ference between the cases. In the *Norton* case there was a rehearing. The first opinion, *Norton v. Brink*, 75 Neb. 566, held that, when an agreement for the purchase and sale of land is fully performed, an action may be maintained against the person holding the title to compel an accounting for the profits realized. On the rehearing it was held that a parol agreement between two persons to purchase a single tract of land together or "in partnership," where the purchase is finally made by one of them, and he pays the whole of the purchase price and takes the title to himself, the other simply agreeing to pay him one-half thereof on demand, does *not* create a partnership between such persons. The evidence in that case shows Mrs. Norton was ready to furnish her share of the purchase price, but was never allowed to pay it, and the sole heir of the purchaser sold the land and refused to account to the plaintiff, Mrs. Norton, for her alleged share of the profits. C. D. Brink purchased the land through Warren Pratt. Pratt dealt with C. D. Brink alone, and Mrs. Norton had no part in the negotiations for the property, and she was not mentioned in connection with the deal. C. D. Brink paid for the land out of his own funds by a check and obtained a deed from the owner. C. D. Brink died seized of the land, and the defendant Jay H. Brink, who was his sole heir at law, subsequently sold the land for $6,400, less the commission. There was no memorandum between C. D. Brink and Mrs. Norton concerning any joint interest in the land or the purchase of it. There was no settlement between Mrs. Norton and C. D. Brink, and he did not refuse to carry out the contract according to the oral agreement, because he died without making any demand for the payment of one-half of the purchase money by Mrs. Norton, and before she had reimbursed him, and before any settlement between them. An action was brought by Mrs. Norton against Jay H. Brink, sole heir of the deceased. She was defeated in the district court for Buffalo county, and on appeal the judgment of the district court was reversed; but on a rehearing it was affirmed and the former judgment of this court was overruled. In the

instant case the plaintiff, Kohl, actively participated in the transaction. The first thing to do was to get an agreement of some kind out of Fullerton, so that the three parties operating together could handle the land. Kohl went along to see Fullerton. The first trip which Munson, Kohl, Kellogg and Phileo made resulted in Fullerton agreeing to such terms as would enable them to handle the land and make a profit out of it if they were successful. Fullerton testified that, when Munson and Kellogg came back to see him, he told Munson that the land could be sold the same as under the original agreement. This original agreement the plaintiff Kohl helped to get. It is not denied that the plaintiff went to see Fullerton, and that the plaintiff and Munson got Fullerton to agree that they might fix the price at $18.50 an acre so far as the purchaser was concerned. Fullerton was only to get $15 an acre for himself. The three of them, the plaintiff, Kohl, Munson and Kellogg, started out to get a purchaser for Fullerton's land. The three of them were all actively in it. The plaintiff Kohl assisted in procuring the consent of Fullerton to cut up the proposed $20,000 mortgage and to place a part of it on the land; each quarter was to carry such an amount as it would conveniently sustain. This made the deal possible. Otherwise it was not possible. The proposed purchaser of the land to be bought of Fullerton was any man with money enough to buy that the three of them could find and get into the deal. Munson testified as to what the arrangement was, $18 an acre, less 50 cents commission and 50 cents an acre commission that Tredway was to get. There is no dispute between the plaintiff, Kohl, and Munson and Fullerton that Tredway's name was on this paper. The plaintiff Kohl sold the interest in the land which Kellogg got to Kellogg himself. Kohl testified that he agreed with Kellogg to take half of Kellogg's interest, and that Kellogg made a settlement with him concerning the half before the deed was executed. Kellogg did not testify, and therefore there was no testimony from him supporting Munson's evidence, that there was no

97 Neb. 12

arrangement with the plaintiff, Kohl, about the division of the profits. Kellogg paid the plaintiff for his interest in the land. Would Kellogg have been willing to pay the plaintiff anything if there was no agreement that the plaintiff should participate in the profits? The conduct of Kellogg seems to support Kohl's evidence. Munson remembered that he handed the memorandum to Fullerton. He does not appear to have known whether Fullerton signed it or not. He did not want Shultheis to know that there was any memorandum, and very naturally under the circumstances. There is a conflict in the evidence, yet enough evidence to sustain the verdict, and for this reason it ought not to be disturbed.

A careful examination of the case of *Norton v. Brink, supra,* seems to be required. It is said in the body of the opinion in that case that Mrs. Norton's contention is that the contract established a partnership between herself and the deceased, and therefore comes within the rule announced in *Dale v. Hamilton,* 5 Hare (Eng.) *369, *Richards v. Grinnell,* 63 Ia. 44, *Pennybacker v. Leary,* 65 Ia. 220, and other cases, which hold that a contract entered into for the purpose of speculating in lands is not within the statute of frauds, and need not be in writing; that where the parties have contracted to engage in the business of buying lands which are to be held in trust for both of them, and they are to have equal interests and shares in the common speculation, such agreement constitutes a partnership, and the action by one partner against the other for an accounting as to the partnership transactions may be sustained, although the partnership funds may be invested in lands. The appellant in *Norton v. Brink, supra,* did nothing upon her part. She contributed nothing. She did not receive anything.

Section 4, ch. 32, Comp. St. 1911, reads: "The preceding section shall not be construed to affect in any manner the power of a testator in the disposition of his real estate by a last will and testament, nor to prevent any trust from arising or being extinguished by implication or operation of law." Section 4 contemplates the danger

of doing wrong under section 3, and endeavors to forbid and prevent the perpetration of such wrong. Section 3 reads: "No estate or interest in land, other than leases for a term not exceeding one year from the making thereof, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same." Because of the existence of section 4 it is made clear that it is within the power of a court of equity to fasten a constructive trust upon property where it is obtained by commission of a fraud, actual or constructive. Section 4 expressly provides that section 3 shall not be construed to prevent any trust from arising or being extinguished by implication or operation of law. This provision includes resulting and constructive trusts which are not created by the express terms of a contract. An agent instructed to purchase property for his principal will not be permitted, without his principal's knowledge and consent, to become the purchaser of the same property for himself.

In *Pollard v. McKenney*, 69 Neb. 742, it was held, as stated in the syllabus: "Where a wife prevails upon her husband, who is fatally ill, to convey certain of his property to her by promising to make a certain disposition thereof among his heirs at law, it will be presumed from her wilful failure to make such disposition that her promise was made without any intention of performing it, and was therefore fraudulent." Another paragraph of the syllabus in the same case reads: "Where a person obtains the legal title to real estate belonging to another by means of fraud, actual or constructive, a court of equity will fasten a constructive trust upon the property, and convert the grantee or those claiming under him, by descent, into trustees of the legal title, and enforce the trust for the benefit of the grantor or those claiming under him." There was a rehearing in this case, and another opinion was delivered. The former opinion was adhered to, and the syl-

labus was further enlarged by adding to it: "A decree establishing a constructive trust should not be limited to a cancelation of the conveyance whereby the constructive trustee acquired title to the land; the trust should be ascertained and enforced."

We adhere to the views expressed in *Norton v. Brink, supra.* We do not consider that the evidence shows the establishment of a partnership, but does show that an arrangement was made by which certain stipulated profits were to be divided among the three persons who engaged in the transaction; that each contributed something, and that all solicited the making of the terms which enabled them to carry out the transaction; that all worked at the common purpose, and that all are rightfully entitled to the division contemplated.

The judgment of the district court appears to be right, and it is

AFFIRMED.