CHARLES J. HARRISON, APPELLEE, v. HIRAM RICE,
APPELLANT. *

FILED APRIL 4, 1907. No. 14,687.

1. **Principal and Agent: AUTHORITY OF AGENT: EVIDENCE.** Letters
written by the holder of the title of a tract of land, and partially
copied in the opinion, *held*, under the circumstances in which they
were written, to have satisfied the requirements of the statute
of frauds, and to have authorized the person to whom they were
addressed to obligate the writer by a contract for the sale of
the land.

2. **Powers: REVOCATION.** A power coupled with an interest is not
arbitrarily revocable without the consent of the donee.

3. **Specific Performance: LACHES.** Mere forbearance to begin an action
for specific performance, not extending beyond the period of the
statute of limitations, and not accompanied by any conduct mis-
leading or tending to mislead the defendant to his damage, or
to lull him into a belief that his repudiation of the contract has
been acquiesced in, will not bar the plaintiff of his right.

APPEAL from the district court for Boone county:
CONRAD HOLLENBECK, JUDGE. *Affirmed.*

*Charles Riley, H. M. Sinclair* and *H. C. Vail,* for appel-
lant.

*J. A. Price, J. J. Sullivan* and *I. L. Albert,* contra.

AMES, C.

This is an action to compel the specific performance of
an alleged contract for the sale of a tract of land. The
plaintiff succeeded in the lower court and the defendant
appealed. The contract purports to have been executed
by the defendant Rice by the defendant Parrott as his
agent, and there is no question about its form or suffi-
ciency, provided he had the power or authority to make
it. The petition alleges that the land had been pur-
chased and was owned by the defendants as partners, and

* Rehearing allowed. See opinion, p. 659, *post.*

that Parrott as the active and business member of the firm had authority to make sale of it, but that the nominal or legal title to it was in Rice, and the defendants falsely and fradulently held out and represented to the public, and especially to the plaintiff, that Rice was the real as well as the ostensible sole owner of it, and that the powers and authority of Parrott over and concerning it were those of an agent only, and that the plaintiff had entered into the contract under a delusion that such was the case; but it was further alleged. that Parrott, in addition to his powers growing out of and incident to his partnership relation, had specific authority to make the contract and sale, which was evidenced by certain letters written to him by Rice, copies of which were set out in the petition, and to which reference will be made further on.    There were the usual allegations of tender and refusal of performance, and the customary prayer.

The petition alleges that at or shortly after the time of the purchase of the land by the defendants, a brief memorandum of the terms upon which it was acquired and was to be held, and according to which it was to be sold within a reasonable time, and the profits accruing from the transaction divided equally between the parties, was contained in a letter written by Rice to Parrott, and signed by the former, and containing the following expression: "Yes, Parrott, I always keep my word.  You are to have one-half of the profits in the above farm and the same in the Copsom farm.  Of course, this is after the expenses are deducted, provided the income do not meet the expenses."   The property, called the "Copsom farm," is the land now in controversy.  The answer does not deny the authenticity of the letter or the interpretation put upon it by the plaintiff, except that it avers "that said memorandum but partially and very imperfectly sets forth said pretended contract, the chief imperfection being that it was understood and agreed between this defendant and his codefendant, Stephen V. Parrott, that said Parrott would procure a purchaser for said land at a

profit within a limited time, and it was not understood and agreed that the time within which he was to procure a purchaser was to be extended indefinitely; that the said Parrott did not procure a purchaser in the said length of time, and that the agreement that once subsisted between this defendant and the said Parrott had expired long before the pretended sale of said land, by the said Parrott to the plaintiff."

This answer is subscribed by Rice in his own hand and sworn to by him, and it is as explicit an admission of the contract between the defendants, and of the power and authority of Parrott to make a sale of the land, as the plaintiff could have desired. It can be said to fall short of a confession of judgment in two particulars only, viz.: First, an admission that the power of sale was in writing subscribed by Rice, and, second, the averment that there was an unexpressed, indefinite limit of the time within which such power was to have been exercised. As to the second of these supposed restrictions, it is difficult for us to understand any difference between a time or duration indefinitely limited and one of indefinite continuance. Both mean, we suppose, the same thing, namely, what is called in legal phrase "a reasonable time," and so we think that the averment itself is too indefinite to require further consideration. There does not appear to have been unreasonable delay, and Parrott cannot be charged with any lack of diligence, so that Rice is without cause for complaint on that score. As to the first above mentioned of the supposed deficiencies in the written memorandum, we think that it is sufficiently supplied by two other letters admittedly written by Rice to Parrott, one dated at Wamego, Kansas, on the 11th day of November, 1899, in which the writer says, having reference to the land in suit: "I hope, Parrott, we can sell it soon or by spring and you and I realize a nice thing on our venture," and another written in January, 1900, in which he says: "We must make all we can out of the place until a good price is given for it." The letters

should, we think, be interpreted in the light of the circumstances in which they were written, and with reference to which the parties must be presumed to have understood them. Rice was absent from the state, mostly in California with an invalid wife, where it was known that he expected to remain for a considerable time. Parrott resided and remained in the vicinity of the land, which he was charged with looking after and obtaining an income from until it should be sold at a profit, which both parties hoped would occur soon, and the letters can be given no other reasonable meaning than that he should find a purchaser and obligate him by contract as soon as a favorable opportunity should present itself. A case in some respects very similar and one involving the same principle of construction is *Lyon v. Pollock*, 99 U. S. 668.

The contract with the plaintiff was made on the 24th of February, 1901, after all these letters had been written, but before that time, to wit, in December, 1900, Rice had entered into a lease of the premises with one De Camp for a term of five years beginning on the first of the following March, and he contends that such lease was a revocation of any previous powers he had conferred upon Parrott, of which both the latter and the plaintiff had knowledge at the time the contract in suit was executed. But whether the admitted partnership was limited to the profits of the venture or extended to the land itself, Parrott had a power coupled with an interest, and such a power is not arbitrarily revocable without the consent of the donee. *Bergen v. Bennett*, 1 Caines' Cas. (N. Y.) 1; *Denson v. Thurmond*, 11 Ark. 586; *Raymond v. Squire*, 11 Johns. (N. Y.) 47; *Knapp v. Alvord*, 10 Paige (N. Y.), 205; *Smyth v. Craig*, 3 Watts & Serg. (Pa.) 14; *Marzion v. Pioche*, 8 Cal. 536. There is no important dispute of facts, and we think it quite unnecessary to decide, upon the issues and record in this case, whether Parrott has an undivided interest or title in the land itself as a partner, or whether Rice holds an undivided interest or

45

title upon a constructive or resulting trust in favor of
Parrott, or whether Parrott has a mere chattel interest,
as a partner, in the proceeds and profits of the transaction.
In either or any view of the case, he had, upon unquestion-
able principles both of law and equity, ample and indis-
putable power and authority to make the contract in
question, which authority is sufficiently evidenced in
writing to satisfy the requirements of the statute of
frauds.

Rice became aware of the contract in suit on or about
March 1, 1901, and at once notified the plaintiff that he
regarded it as having been made without right or author-
ity, and as being therefore void. Immediately thereupon
he proceeded to erect, and did erect, upon the premises a
house and barn at an expense and of a value, as found by
the trial court, of $1,200. These improvements were not
made in reliance upon any inducement or representation
by the plaintiff, or because of any conduct of the latter
indicating acquiescence in a repudiation or rescission of
the contract, or an intention on his part to abandon it,
but, on the contrary, were made in conscious and open
hostility to and defiance of the plaintiff's right. Since
that time Rice by himself or his tenant has remained in
undisturbed possession of the farm and in receipt of its
rents, issues and profits, amounting to several hundreds
of dollars a year. The contract price of the land is $7,300,
which counsel agree was about its fair value at the time
the agreement of sale was made. This action was begun
on the 5th day of January, 1905, three years and ten
months afterwards, after the land had risen in value, as
counsel also practically agree, to about $16,000. It is
insisted now by the defendant that the equity of the plain-
tiff, if he ever had any, has been lost by laches and delay.
The trial court so far admitted the plea as to allow the
defendant a lien upon the premises for the amount of the
value of the improvements. This decree does not appear
to us to be inequitable to the defendant. The authorities
are unanimous that there is no definite or certain rule by

which to determine when a decree for a specific performance will be denied because of laches, but by general consent the matter is held to be within the sound judicial discretion of the court. We have not been cited to any authority holding that a mere forbearance to sue, not extending beyond the period of the statute of limitations, and not accompanied by any conduct misleading or tending to mislead the defendant to his damage, or to lull him with a belief that his repudiation of the contract has been acquiesced in, will bar the plaintiff of his right. Mere increase in the value by the lapse of time, not due to any expenditure or effort on the part of the defendant, for which he cannot be fully compensated, ought not, in our opinion, to have that effect. And so we think are the authorities. *Falls v. Carpenter,* 1 Dev. & B. Eq. (N. Car.) 237, 28 Am. Dec. 592; *Willard v. Tayloe,* 8 Wall. (U. S.), 557; *Hale v. Wilkinson,* 21 Grat. (Va.) 75; *King v. Raab,* 123 Ia. 632; *Hawley v. Von Lanken,* 75 Neb. 597. To hold otherwise in circumstances like those in the case at bar would, as it seems to us, be to permit the defendant to found his defense upon his own wrong and misconduct, instead of upon that of the plaintiff. He has had the net revenues of the property, which exceed the prevalent rate of interest on the purchase price during the interval of delay. The delay was due solely to his own conduct, and he is reimbursed the value of the improvements that he put upon the premises in defiance of the plaintiff's right. The decree appears to us adequately to adjust the equities of the parties, and we recommend that it be affirmed.

OLDHAM and EPPERSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on motion for rehearing was filed December 5, 1907. *Former judgment of affirmance adhered to:*

Harrison v. Rice.

1. **Equity: LACHES.** No arbitrary rule exists for determining when a demand becomes stale, or what delay will be excused, and the question of laches is to be decided upon the particular circumstances of each case.

2. ———: ———: **STATUTE OF LIMITATIONS.** Unreasonable delay alone, independently of any statute of limitations, may operate as a bar to equitable relief. Generally, however, when a statute of limitations is applicable, lapse of time alone, short of the period of limitation, will not operate as a bar.

3. ———: ———: ———: **BURDEN OF PROOF.** When the suit is brought within the time fixed by the analogous statute of limitations, the burden is on defendant to show the existence of circumstances amounting to laches. When the suit is brought after the statutory time, plaintiff must plead and prove that laches does not exist.

4. ———: ———. "In applying the doctrine of laches the true inquiry should be whether the adverse party has been prejudiced by the delay in bringing the action, and whether a reasonable excuse is offered for the delay." *Hawley v. Von Lanken,* 75 Neb. 597.

5. **Specific Performance: LACHES.** A delay of three years and ten months, pending litigation in the courts to establish the validity of the contract for the sale of real estate sought to be specifically enforced, is not an unreasonable or unexplained delay under the circumstances, and does not render the vendee guilty of laches barring equitable relief, even though the land has increased in value during such period.

EPPERSON, C.

This case is before us on rehearing, a judgment of affirmance having been entered at a former term. *Ante,* p. 654. Generally, a motion for rehearing should be limited to the propositions relied on at the original presentation of the case, and we do not feel required to pass upon the point now argued as to the sufficiency of the petition, which is called to our attention for the first time in the brief on rehearing. However, disregarding surplusage, and applying the rule that a petition will be liberally construed when attacked for the first time in this court, we think the pleading assailed states a cause of action. In substance, it alleges a contract between defendants under which they engaged in buying and sell-

ing real estate; that the capital was to be furnished by Rice, in whose name the legal title to the land purchased was to be taken; that the skill, judgment and labor required in the purchase and sale of the real estate should be furnished by defendant Parrott; and that upon a sale the profits were to be equally divided between the defendants. A letter from Rice to Parrott is pleaded, in which the former recognized the interests of the latter in the land in controversy, the legal title to which then stood in the name of Rice. Then follows the written agreement set forth in the petition signed by "Hiram Rice, by S. V. Parrott, Agt.," and also signed by the plaintiff, Harrison. This agreement provides for the conveyance of the land by Rice to the plaintiff upon the payment of the purchase price. It is further alleged that the defendants held themselves out to the public as principal and agent, and that Rice now denies that Parrott has any interest in the land or the profits arising from the sale thereof; and that defendants refuse to comply with the terms of said written agreement. Plaintiff prayed for a decree requiring defendants to specifically perform the contract.

It is evident that a clear, definite and complete contract is alleged, and that the defendant Rice refused to comply with its terms. If Parrott were not a necessary party, the fact that he was named as a party, and the fact that nothing remained for him to do in the full execution of the contract, does not render the petition insufficient as to Rice. The evidence is sufficient to sustain the decree. It is unnecessary to say anything further here, as the former opinion sufficiently reviews the evidence.

The remaing point for our consideration is whether plaintiff's laches barred the equitable relief sought in this action. The writer was in doubt concerning the correctness of the conclusion first announced on this branch of the case, and was inclined to think that plaintiff, having slumbered on his rights for three years and ten months, was apparently aroused into activity by the discovery

that the property had materially increased in value, and hence should be denied a decree for specific performance. Further examination of the record and the authorities, however, removes all question concerning the correctness of our former opinion and requires the reaffirmance of the judgment. No arbitrary rule exists for determining when a demand becomes stale, or what delay will be excused, and the question of laches is to be determined upon the particular circumstances of each case. Unreasonable delay alone, independently of any statute of limitations, will often operate as a bar to relief. *Hawley v. Von Lanken,* 75 Neb. 597. But, when a statute of limitations is applicable, it is quite generally held that lapse of time alone, short of the period of limitation, will not operate as a bar. When the suit is brought within the time fixed by the analogous statute of limitations, the burden is on the defendant to show the existence of circumstances amounting to laches. When the suit is brought after the statutory time, plaintiff must plead and prove that laches does not exist. *Kelley v. Boettcher,* 85 Fed. 55; *Boynton v. Haggart,* 120 Fed. 819; *Wyman v. Bowman,* 127 Fed. 257; 16 Cyc. 180. The present suit was instituted within the time prescribed by the statute, and, therefore, the inquiry is: Did defendant successfully carry the burden of proving the existence of circumstances amounting to laches? "In applying the doctrine of laches the true inquiry should be whether the adverse party has been prejudiced by the delay in bringing the action, and whether a reasonable excuse is offered for the delay." *Hawley v. Von Lanken, supra.* Defendant in the case before us contends that he was prejudiced by plaintiff's delay in bringing the action, and our attention is called to the fact that valuable improvements were placed on the premises by defendant Rice before suit was instituted. The former opinion, *ante,* p. 654, answers this contention. It is there said: "These improvements were not made in reliance upon any inducement or representation by the plaintiff, or because of any conduct of the latter indicat-

ing acquiescence in a repudiation or rescission of the con-tract, or an intention on his part to abandon it, but, on the contrary, were made in conscious and open hostility to and defiance of the plaintiff's rights.".

It is further argued that defendant was prejudiced to the extent of the increase in the value of the land, and that it was inequitable to permit plaintiff to withhold his claim for specific performance awaiting the rise or fall in the value of real estate, and then assert or renounce his interest in accordance with the result. It has been held that "the unexplained delay of the vendee to sue for the specific performance of a contract for the sale of a town lot for $3\frac{1}{2}$ years after the vendor refused to comply with the contract, and took possession of the lot, renders him guilty of laches which bars his right to such relief." *Wolf v. Great Falls Water Power & Townsite Co.,* 38 Pac. 115, 15 Mont. 49. See *Gentry v. Rogers,* 40 Ala. 442; *Combs v. Scott,* 76 Wis. 662, 45 N. W. 532, and the author-ities collected by Judge IRVINE (formerly a commissioner of this court) in his excellent article on "Equity." 16 Cyc. 150-181. In all the cases we have examined, however, the delay barring equitable relief is qualified, as in *Wolf v. Great Falls Water Power & Townsite Co., supra,* by such expressions as "unexplained," "without excuse," "un-accounted for," and this leads us to inquire if the delay relied on in the case at bar was without excuse or was unexplained, otherwise, under the rule announced in the decisions above cited, the claim of plaintiff might be barred by laches. Lapse of time short of the statutory period will not bar relief where circumstances exist ex-cusing the delay and rendering it inequitable to interpose the bar. The excuse offered by plaintiff in the instant case is found in the record and is as follows: "Q. Mr. Harrison, why didn't you commence an action to enforce this contract for the sale of this land before? A. I was waiting to see what the outcome was in the other suit. I thought it was no use commencing the suit until it was determined whether Mr. Parrot had authority to deed me

that land or not." The pleadings and judgment in "the other suit" referred to were introduced in evidence (see *Parrott v. Rice*, 76 Neb. 501, 505), and it appears that the validity of the contract herein sought to be specifically enforced and the authority of the agent to execute it were questioned in *Parrott v. Rice, supra*. In view of this fact, was plaintiff justified in waiting the termination of that suit before instituting the present action? We think he was. He knew that Parrott claimed the property as partnership property, and had sued Rice to establish his claim, and that the case would probably be determined soon. The subject matter of that litigation went to the very foundation of this action. It involved the right of Parrott to bind Rice by the contract here sought to be specifically enforced. In *Parrott v. Rice* the latter contested the former's authority to bind him in the sale of the land here in controversy. In the event that Rice prevailed in that litigation, plaintiff herein could not reasonably expect an enforcement of his contract. We are of opinion that defendant failed to prove that plaintiff's delay was prejudicial, or that he was without reasonable excuse for postponing the present litigation until the case of *Parrott v. Rice* was heard. Under the circumstances of this case plaintiff was not guilty of such laches as disentitled him to the aid of a court of equity, and the trial judge, in the exercise of the discretion reposed in him, was justified in awarding a decree of specific performance.

Our former opinion should be adhered to, and we so recommend.

DUFFIE and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, our former opinion is adhered to.

AFFIRMED.