FRED GEISS ET AL., APPELLANTS, V. TRINITY LUTHERAN
CHURCH CONGREGATION ET AL., APPELLEES.

FILED MAY 9, 1930.   No. 27248.

*Kepler & Kratz,* for appellants.

*Radcliffe & Wehmiller, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY and DAY, JJ., and WRIGHT, District Judge.

GOOD, J.

This is an action in equity, the primary object of which is to determine which of two religious societies has title and right of possession to a church edifice and the lots on which it stands, in the village of Dalton, Cheyenne county, Nebraska. There are other parties and other issues, to which reference will be made in the course of this opinion.

The action was brought by Evangelical Lutheran Trinity Congregation of Dalton and by certain individuals as members of said church organization, on behalf of themselves and all other members of the said society, and against Trinity Lutheran Church Congregation and the trustees of the latter organization, and also against certain individuals who had formerly held title to the lots in question. For convenience, the two church societies will be referred to as plaintiff and defendant, and the other parties to the action will be separately designated.

Plaintiff asks to have a certain deed of conveyance canceled and title to the church property quieted in it. For a defense defendant challenges the jurisdiction of the court, claims title by virtue of certain actions of the congregation, hereinafter referred to, and also alleges that plaintiff has been guilty of such laches as will prevent it from main-

taining this action. Trial resulted in a decree quieting title to the property in the defendant and foreclosure of mortgages held by cross-petitioner. Plaintiffs have appealed.

There is but little conflict in the evidence, and it may be remarked at the outset that all of the witnesses who have testified on either side of the case have shown the utmost consideration and forbearance, each for the other, and have refrained from any show of bitterness or personal animosity that usually characterizes this kind of litigation. The fine spirit of fairness displayed by each party and its adherents is to be commended.

The record discloses that in 1913 a small number of individuals organized the plaintiff church society, adopted a name, and affiliated with the Nebraska Synod, which is a subordinate, affiliated organization of the General Synod of Evangelical Lutheran Church in America. Three of the members, J. Frerichs Mintkin, Adolf Kunzie, and O. J. Willms, as a donation to the church organization, purchased three lots for a church site. Title was taken in their individual names for the benefit of the church. The members of the organization subscribed and raised funds, which, together with funds advanced by cross-petitioner Board of Church Extension of the General Synod of Evangelical Lutheran Church, were used to construct the church edifice. The building was completed in 1914. The constitution adopted by the plaintiff provided for the election of three trustees to have charge of the church property and administer its business affairs. Through neglect the title to the lots was never conveyed to plaintiff's official trustees. The congregation was small and undoubtedly unable to pay for and maintain a pastor to minister to it regularly. A pastor, of the same denomination, at another location, some 20 miles distant, was assigned to and held services in the new church ordinarily each alternate Sunday. It appears that sometimes this minister was unable to fill his regular appointments.

On January 2, 1920, at an annual meeting of the church congregation, the following proposition was voted upon:

"Shall we leave this Synod and go to the Missouri Synod?" The Missouri Synod is an entirely distinct religious organization from that of the Nebraska Synod, operating under the General Synod. At this meeting four persons voted to go to the Missouri Synod; two, and perhaps three, voted against the proposition. There were other members of the church society not present, and some who were present but did not vote.

The constitution adopted, by the plaintiff contained, among other things, the following: "All property in possession of this Congregation shall belong to it, and shall not be taken away nor craftily alienated so long as there remain three male members holding to the name of the Congregation and recognize this Church Government." The evidence discloses that at the time of the meeting in January, 1920, and ever since, there were and are more than three male members of the plaintiff, holding to the name of the congregation and who recognize its church government. The original members of the plaintiff who were not in favor of transferring their allegiance to the Missouri Synod apparently believed, at the time, that the vote taken was conclusive and had the effect of transferring plaintiff's church property to the defendant. Of the three individuals who had taken title to the church property for the plaintiff, two had removed from the vicinity and the third had died. In 1924 the defendant procured the signatures to a deed of the two surviving individuals and of the widow of the third individual who had formerly held title to the church property for the plaintiff. Later, the members of the plaintiff church who had remained loyal to its name and church government were informed that they had not lost title to the church property, but were entitled to its possession. They sought, without avail, to obtain, by peaceable means, possession and to regain title. In 1929 this action was instituted.

The defendant's objection that the court was without jurisdiction has little or no merit. Defendant in its answer asks affirmative relief. It prays to have the title to

the church property quieted in it. It seeks the same character of relief as does the plaintiff. A litigant may not invoke the aid of a court and at the same time deny that it has jurisdiction to administer the character of relief for which he prays.

We think it is quite clear that the ecclesiastical courts could not have administered the relief desired. The Missouri Synod and the defendant church affiliated therewith were not subject to the jurisdiction of the Nebraska Synod or of the General Synod, with which the plaintiff church was affiliated. It is also apparent that the ecclesiastical courts could not determine the title to the real estate and compel a conveyance from one to the other. Where two different church societies are entirely separate in their allegiance to higher church organizations, and each claims title to real estate constituting church property, the ecclesiastical courts of neither organization has jurisdiction to determine title or right of possession. Such a situation presents a case for determination by the civil courts. Civil courts will exercise their jurisdiction to protect the property rights of religious societies, even though the one invading such rights may be a rival religious organization. *Rottmann v. Bartling,* 22 Neb. 375; *Avery v. Baker,* 27 Neb. 388; *Bonacum v. Harrington,* 65 Neb. 831; *Parish of the Immaculate Conception v. Murphy,* 89 Neb. 524; *Kenesaw Free Baptist Church v. Lattimer,* 103 Neb. 755; *Reichert v. Saremba,* 115 Neb. 404; *Schlichter v. Keiter,* 156 Pa. 119, 22 L. R. A. 161.

We next inquire as to what, if any, title to the church property the defendant acquired by the vote taken in January, 1920, and the deed executed by the individuals who had formerly held title for the plaintiff church. The above quoted provision of plaintiff's constitution seems to clearly limit the power of the church society to alienate its property so long as there remain three male members holding to the name of the congregation and recognizing its church government.

It is a well-recognized principle of law that a church society may adopt for its government a constitution, and

that, unless its provisions are in conflict with the statute or contrary to public policy, it will be binding upon the members of the church. As already observed, there are more than three male members who were, at the time of the attempted alienation, and ever since have been, holding to the name of the congregation and recognizing its church government. Its constitution, under existing conditions, was a bar to the transfer of the church property.

The constitution of plaintiff also contained the following provisions:

"Our Congregation is an organization of Evangelical Christians and shall be known as the Evangelical Lutheran Trinity Church.

"This Congregation is called Evangelical because built on the faith of the Apostles and Prophets, Jesus Christ himself being the Chief Corner Stone. Lutheran because it acknowledges the faith and doctrines of our fathers in the Church which holds this name. * * *

"Since our Congregation holds the faith of the General Synod of the Evangelical Lutheran Church in America, and since it desires to maintain that position, therefore it shall be affiliated with a District Synod which represents that General Body."

The Nebraska Synod above mentioned is a district synod representing the General Synod referred to.

We are forced to the conclusion that the vote of the congregation, taken in January, 1920, did not operate to transfer the title or right of possession of the church property to the defendant.

So far as the execution of the deed by the individuals who took title in trust for the plaintiff is concerned, it may be noted that they were not officers of the church; they had no authority to act for the church; they were naked trustees, merely holding title for the church, and any action on their part, in attempting to transfer the title to any other society than the one for which they were holding it in trust, was without authority. Defendant, having knowledge of the situation, could thereby acquire

no title or valid claim to the church property. Moreover, no attempt was made to comply with the provisions of section 571, Comp. St. 1922, which purports to regulate the manner in which church property may be alienated.

Has the plaintiff been guilty of such laches as will deprive it of the right to recover in this action?

In *Galliher v. Cadwell*, 145 U. S. 368, 36 L. Ed. 738, it was held: "Laches does not, like limitation, grow out of the mere passage of time; but it is founded upon the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties."

In a note to *Felix v. Patrick*, 36 L. Ed. (145 U. S. 317) 719, 720, we find the following: "The objection of laches is not tenable to defeat an equity cause, where there has been no material change in defendant's position, or in the subject-matter of the action, caused by plaintiff's delay; or where the plaintiff has been ignorant of his rights, or, though apprehensive of them, there was such an obscurity in the transaction that it was difficult to gain the facts upon which to maintain the action"—citing *Blennerhassett v. Day*, 2 Ball & B. (Ir. Ch.) 104, and other cases.

"Mere delay in bringing an action to set aside a judgment and sale in foreclosure, not exceeding the time limited by the statute, and where defendant is not prejudiced, will not bar relief. *McMurray v. McMurray*, 66 N. Y. 175." At page 721, it was said: "Where a legal right is involved, and upon grounds of equity jurisdiction the courts have been called upon to sustain it, the mere laches of the party seeking redress, unaccompanied by circumstances amounting to an estoppel, constitutes no defense."

In *Garden Cemetery Corporation v. Baker*, 218 Mass. 339, it was said, in effect, that, where no one has been misled to his harm in any legal sense by the delay and the situation has not materially changed, the delay is not fatal. And in *Kentucky Block Cannel Coal Co. v. Sewell*, 249 Fed. 840, it was held that, the defense being an equitable one, the lapse of time and the relations of the defendants to the

rights must be such that it would be inequitable to permit plaintiffs to maintain their rights.

In *Kimberly-Clark Co. v. Patten Paper Co.* (153 Wis. 69) 140 N. W. 1066, it was held: "Where each of the parties to an action seeks affirmative relief against the other, arising out of the same state of facts, one cannot claim that the other is guilty of laches."

This court has held in *Fitzgerald v. Fitzgerald & Mallory Construction Co.*, 44 Neb. 463: "Mere lapse of time, unaffected by other circumstances, will not bar the right to rescind a voidable transaction."

In *Hawley v. Von Lanken,* 75 Neb. 597, it was held: "In applying the doctrine of laches the true inquiry should be whether the adverse party has been prejudiced by the delay in bringing the action and whether a reasonable excuse is offered for the delay." The ruling therein was reaffirmed in *Hawley v. Pound,* 76 Neb. 130, and *Hawley v. Barry,* 76 Neb. 131.

In *Harrison v. Rice,* 78 Neb. 654, it was held: "Mere forbearance to begin an action for specific performance, not extending beyond the period of the statute of limitations, and not accompanied by any conduct misleading or tending to mislead the defendant to his damage, or to lull him into a belief that his repudiation of the contract has been acquiesced in, will not bar the plaintiff of his right."

The rule in *Hawley v. Von Lanken, supra,* was reaffirmed in *Harrison v. Rice,* on rehearing, 78 Neb. 659. A similar rule was announced in *Northwest Ready Roofing Co. v. Antes,* 117 Neb. 121.

From the record it does not appear that defendant has been prejudiced by the delay in bringing the action. There is nothing to show that it has expended any sum upon the upkeep or repair of the church building, or has in any wise been placed in a worse plight than if the action had been brought at an earlier period. Applying the rules announced in the foregoing cited authorities to the facts disclosed by the record, we are required to hold that the mere delay in bringing the action did not bar plaintiff of its

right to relief. This disposes of the defenses urged by defendant. Plaintiff was the owner of the church property. It has never been lawfully divested of its title and right of possession. A decree should have been entered in the district court, quieting title in the plaintiff, awarding it possession of the property, and canceling the deed executed by the individuals, who had formerly held title for plaintiff, and whereby an attempt was made to convey the title to the defendant.

A decree of foreclosure was entered in favor of cross-petitioner upon its mortgages. Such decree was sought by cross-petitioner only in the event that title was not quieted in the plaintiff. Since the title should have been quieted in plaintiff, the decree of foreclosure in favor of cross-petitioner should be vacated and set aside.

The judgment of the district court is reversed, and the cause remanded, with instructions to enter a decree, canceling the deed whereby the defendant attempted to acquire title, and quieting title in the plaintiff, or, rather, in its official trustees, and for this purpose further evidence should be taken to determine who are the individuals holding the offices of trustees, and the title should be quieted in the name of the trustees and their successors in office.

The judgment of the district court is reversed, and the cause remanded, with directions to enter judgment in conformity with this opinion.

REVERSED.