16698

ST. ANDREWS EVANGELICAL LUTHERAN CHURCH, OF COLUMBIA, S. C. *ET AL.* v. ST. ANDREWS EVANGELICAL LUTHERAN CHURCH OF COLUMBIA, S. C., INC.

(73 S. E. (2d) 845)

*Messrs. Davis* and *Lanford,* of Columbia, *for Appellants,*

*Mr. J. D. Carroll,* of Lexington, *for Respondent,*

December 30, 1952.

STUKES, Justice.

The transcript of record for appeal in this action in equity was settled by the trial judge by order dated May 20, 1952. Rule 49 of the Circuit Court. There was no appeal from this order of settlement of the record so the parties are bound by it, including the contents of the statement. Rule

4 of this Court. Because the argument on appeal treated as in issue some of the relevant facts which were settled by the statement which governs, the latter is quoted in full from the transcript, as follows:

"Statement.

"About 1835 land in Lexington County was donated for the construction of a Lutheran Church, a congregation was formed, a church building constructed, and worship services held there until 1948. The name of the original congregation was Saint Andrews Evangelical Lutheran Church of Lexington County. In 1935 the two last words of that name were deleted, and the one word "Columbia" was substituted.

"On January 9, 1944, by congregational action, after notice duly given, a resolution to relocate the church was offered and was voted down. This action was set aside by the Church Council, as the record shows, on the ground that the voting had not been confined to members 'in good standing' as defined by the Church law, but had been by the members generally; and it was decided by the Church Council to postpone further consideration of the matter for a period of ninety days.

"On May 14, 1944, after due notice, another congregational meeting was held, another resolution to re—(here there is an evident omission in the printed record but the meaning is preserved—interpolated.) members 'in good standing,' and the result was in the affirmative. In 1946, by congregational action, there was selected a site for the new church building. (Which is across the county line in Richland County—interpolated.)

"In arranging for a construction loan to finance the new church building, it was found essential that the congregation be incorporated, and a resolution to this effect was considered and adopted by the congregation, after due notice. Incorporation was perfected through regular legal procedure, the loan secured, the church building constructed and occupied, practically all of the church furniture and fixtures

moved into it from the old church building, and worship ser-vices carried on in the new building.

"Then, by congregational action, duly noticed, the old church building, and the parsonage (owned by two congre-gations), were advertised for sale, and that resulted in the bringing of this suit.

"In September, 1949, a temporary injunction to stop the sale of the property and prevent trespassing thereon was se-cured by plaintiffs, although it is shown by the testimony that between 1946 and 1949 most of the individual plaintiffs herein had transferred their memberships to other Lutheran churches, and were not members of the defendant congrega-tion at the time this action was begun.

"The complaint states among other things that the de-fendant does not constitute the original congregation and is not its legal successor. It questions the legality of its acts and challenges its title to the property held prior to the estab-lishment of the new church building. In its Return to the rule issued, defendant claimed that all its acts were legal, and reserved the right to answer. Defendant also demurred, alleging that plaintiffs were not a legal entity, and that it did not affirmatively appear that the individual plaintiffs were authorized to bring the action, and that there was a defect in parties. After a full hearing, the Court in April, 1950, dis-solved the restraining order and dismissed the complaint, although the testimony taken was not reduced to writing.

"Plaintiffs filed exceptions to this order, stating that they did not understand the hearing was on the merits and had not presented their testimony, whereupon the Court set aside the order, re-opened the case, and permitted defendant to file in the record affidavits containing a resume of its testimony at the first hearing.

"Plaintiffs made a motion for a jury trial, in that the question to land was involved, but this was denied, and they then placed in the record their testimony. In an order dated October, 1950, the Court dissolved the temporary injunc-

tion, denied a permanent injunction, and dismissed the complaint.

"Plaintiffs gave notice of intention to appeal. Upon inability of counsel to agree, defendant moved that the Court settle the case for appeal.

\* \* \*

"The foregoing \* \* \* shall constitute the record on appeal \* \* \*."

In further explanation of the foregoing facts, it may be said that the record establishes that a Lutheran Church, which this is, is largely congregational in its form of government, and see Webster's New International Dictionary, 2nd ed., 1470, and the church was and is governed by a constitution and by-laws. Interesting local history of the denomination is found in *Harmon v. Dreher*, 1843, Speers, Eq. 87. Under them the Church Council is the administrative and executive body and constitutes the Board of Trustees, the members of which are elected by the congregation. Article IV of the constitution follows:

Membership.

Sec. 4(c) "Members who partake of the Holy Communion at least once a year shall be regarded as communing members."

Sec. 4.(d) "Communing members who regularly attend divine services and who are not in arrears in their subscription for the support of the congregation shall be regarded as members in good standing."

Sec. 5(a) "All members of this congregation who are in good standing shall be eligible to vote and hold office."

The by-laws provide that a congregational meeting shall be publicly announced at divine services on at least two Sundays previous to such meetings and the time, place and object stated. Only one plaintiff testified who claimed continued membership in the church (and that not in good standing) and he had notice, was present and participated in the questioned meeting. The minutes of it show that it

was called by the Council upon the petition of fifty-seven members and the first action at it was by unanimous vote of fifty-three that only members in good standing should participate. The voting was by signed ballots so that qualification could be enforced, and it was, whereby the ballots of three were cast out.

A visitor at this meeting was Dr. Karl W. Kinard who was president of the South Carolina Lutheran Synod, which is affiliated with the United Lutheran Church in America. A part of his testimony in the trial court follows:

"I was not present in an official capacity, but largely as an observer and as one deeply interested in it, since the synod is concerned about steps of congregations which make for progress. I was particularly impressed with the way in which the pastor, Reverend George F. Schott, Jr., went about in holding the congregational meeting. Slowly and carefully he explained the purpose of the meeting and the meaning of the resolution to relocate, asked the congregation if they understood and if they wanted to ask any questions, and that he was careful to do everything in the handling of the meeting in a businesslike manner and to see that the procedure was proper. My observation was that everything was orderly and regular."

The proceedings in the lower court were quite irregular, but there is no appeal on that account. Testimony was taken on demurrer to the complaint and return to a rule, with decision upon the merits following. The return was apparently taken as an answer, as in Morris Street Baptist Church v. Dart, 67 S. C. 338, 45 S. E. 753, 100 Am. St. Rep. 727. Upon application thereafter by plaintiffs the case was reopened and they introduced testimony. Final judgment upon the merits followed, whence plaintiffs appealed to this court.

The exceptions will be separately discussed except that numbered three, which is manifestly too general for consideration, it being that the judgment under

review, quoting from the exception, "is contrary with (sic) the law and evidence."

The first exception violates Sec. 6 of Rule 4 of this Court by reason of duplicity, but both points are without merit. The first is that the Council illegally undertook to invalidate the action of the congregational meeting held on January 9, 1944, which it did because members not in good standing had been permitted to vote. Granting that the action then was against moving the place of worship because the favorable majority was less than two-thirds of those voting, it would not now avail appellants because the move was made pursuant to the later action by the congregation at the meeting held on May 14, 1944. The other point of this exception challenges the sufficiency of notice of the final congregational meeting. But the statement quoted above settled this point adversely to appellants. For the latter reason the repetitious sixth exception is also overruled.

It is asserted in the second exception that it should have been found that there was no congregational meeting on May 14, at which a sufficient number of those present voted for the move. This also is answered by the statement above but it may be added that there is no question of the accuracy of the minutes in evidence which show that fifty-three members in good standing voted for relocation of the church and sixteen against.

The fourth and fifth exceptions assign error in refusing jury trial of issue of title to the real and personal property of the church. There was no such issue in view of the decision upon the merits which upheld the validity of the congregational action whereby a new place of worship was acquired and church plant erected all, incidentally, before this action was brought. Meanwhile the communing members more than doubled in number and the value of the physical property multiplied.

The seventh and eighth exceptions follow:

"7. That the court erred in not finding as a fact that the defendant is not the duly organized Saint Andrews Evangelical Lutheran Church located in Lexington County and that the plaintiffs are members of the defendant congregation.

"Error being that the evidence clearly indicates that the defendant is a corporation which was organized by some members of the plaintiff congregation.

"8. That the court erred in not finding that the congregation was not legally incorporated.

"Error being that it was not the action of the entire congregation but the action of a splinter of the members of the congregation and that such action in no way affected the entire congregation, it not having been done in compliance with the constitution and by-laws."

Under these exceptions appellants contend that the decision of the congregation to incorporate was invalid for lack of unanimity, and cite 8 Fletcher Cyclopedia of the Law of Private Corporations, Perm. Ed. 344, Sec. 3994. It is seen, however, that the exceptions do not, in fact, clearly make the point of required unanimity and for that reason it need not be decided. In fact, the congregational action to incorporate was by a vote of thirty-eight to two at a meeting of which there is no contention of insufficient notice, which indicates that the designation, "splinter", which is used in the quoted eighth exception, is misdirected. The exceptions are further irrelevant because no advantage would accrue to appellants in this action, whether the church was legally incorporated or not. In any event, the validity of the incorporation is not subject to collateral attack. 76 C. J. S., Religious Societies, § 6, page 752. The record discloses that during its long history the church has been several times incorporated for limited durations under the then existing state statutes and the last previous incorporation had been allowed to lapse.

The ninth exception follows: "That the court erred in finding that to raze the church building and discontinue worship services there and convert the grounds into a community cemetery constitutes use for church purposes. Error being that the testimony of the defendant was that the grounds should be used as a community burial ground not limited to the membership of the church and this would constitute the use of the premises for purposes other than church purposes and is illegal."

The complaint and return (treated also as an answer) did not put in issue the contemplated future use of the cemetery and the judgment under review contains nothing on the subject. Therefore this decision on appeal does not touch it. The pastor of the congregation at the time of the hearing on circuit in 1950 testified that it was his idea that the cemetery might serve the entire community, not the congregation alone, which must be the basis of the exception, untenable for the reasons stated. The point is not decided simply because it is not presented on the record. However, it may be added that by the latest pertinent action of the Council which is contained in the transcript, the cemetery is for the use of members of the congregation. .

By exception ten, which is the last, it is contended that the action of the congregation in moving the place of worship a distance of about four miles or less amounted to dissolution of the congregation and was invalid under section 4 of article IX of the constitution of the church, which is as follows: "A complete annulment of this Constitution and the consequent dissolution of this congregation cannot take place so long as ten (10) voting members are willing to continue the organization." The move of four miles or less by a rural church, particularly in view of the present paved roads and general use of automobiles, cannot reasonably be held to be the end of the old and the beginning of a new congregation, certainly in this case when the move was to a highway where most of the members live. As seen above, sixteen members in good standing voted

against the move and fifty-three in favor. The minutes of the congregational meeting further disclose that when the votes were being counted and before the result was announced, motion was made, seconded and adopted, fifty-two to two, that the action should be final as to the relocation of the church. The president of the State Synod was present and addressed the congregation. His testimony in behalf of respondent has been quoted in part. As seen above, this was on May 14, 1944. Over five years afterward ten plaintiffs instituted this action. One of the two who testified admitted that in the interim she had joined another church. The trial court found, to which there is no exception, as follows: "It was shown by witnesses for the defendant that only one of the plaintiffs was a member of defendant congregation in good standing and that at least half of plaintiffs had moved their membership elsewhere prior to the bringing of the action."

In support of this last exception appellants cite *Geiss v. Trinity Lutheran Church Congregation,* 1930, 119 Neb. 745, 230 N. W. 658, 660. There an unincorporated congregation was governed by a constitution providing, "All property in possession of this Congregation shall belong to it, and shall not be taken away nor craftily alienated so long as there remain three male members holding to the name of the Congregation and recognize (sic) this Church Government." By a vote of four to two or three the congregation decided to transfer from the Nebraska Synod, affiliated with the General Synod, to the Missouri Synod, which was not affiliated with the General Synod. It was held that the action was invalid because there remained more than three adhering male members of the old congregation and the church property, which had been conveyed to the new organization, was restored to the old. It is seen that no such problem is here presented because this case is only concerned with the removal of a country church to a new location about four miles distant from the old; in the cited case there was an

attempt to transfer from one denomination to another. The inapplicability of the cited decision is patent.

A comparable case to that at bar, because it involved the removal of a church from one location to another, is *German Evangelical Lutheran Trinity Congregation of the Unaltered Augsburg Confession, etc., v. Deutsche Evangelisch Lutherische Dreieinigkeits Gemeinde Ungeaenderter Augsburgische Confession, etc.,* 246 Ill. 328, 92 N. E. 868, 873, 20 Ann. Cas. 404. There the move was only three-quarters of a mile, from without a village into it; but at that time, in 1908, with the then common means of transportation, the real distance was doubtless greater than the four miles or less involved in the instant case. A very substantial minority opposed the move; the vote was seventy-six to fifty-six. Nevertheless, the action of the majority was upheld by the court upon the ground that it was in the exercise of the judgment of the congregation for what the majority deemed was for the best interests of the church, and said: "Obviously, which faction was right about this matter is not a question for a court to determine."

The caption of 76 C. J. S., Religious Societies, § 60(c), page 834, is as follows: "In general the society, or its trustees, may regulate the use of the church property, may make repairs, alterations, and improvements, and in a proper case *may change the location of the church* or build associate churches or chapels." (Emphasis added.) The question in our case of *Wagner v. Vestry and Wardens of Episcopal Church in Parish of Christ Church,* 1857, 9 Rich. Eq. 155, was as to the right to construct, from church funds, a chapel, at a distance of about six miles from the church, which the court sustained, and also said: "If their church building were destroyed, or its site became insalubrious or the bulk of the parishioners collected in some other neighborhood,— if any circumstances rendered it advisable, having respect to the whole parish—I suppose it was competent to change the location, and erect a new church edifice elsewhere."

· · The limited jurisdiction of the civil courts over church controversies, usually dependent upon the necessity of the adjudication of property rights, civil rather than ecclesiastical questions, is carefully set forth in *Turbeville v. Morris,* 203 S. C. 287, 26 S. E. (2d) 821, with citation of our earlier, leading cases. Apparently all of the relevant South Carolina decisions are collected in 16 S. C. Digest, Religious Societies, Key No. 1 *et seq.*

The exceptions are overruled and the judgment affirmed.

BAKER, C. J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.