JONES, Justice.
This is an appeal from a quiet title proceeding brought by the Greater Friendship African Methodist Episcopal Church of Shorterville, Alabama, against Arthur Spann. The trial Court heard the evidence ore tenus, and entered a decree awarding the disputed property to Spann in fee simple. We affirm.
The disputed land is a five-acre tract which adjoins the Church grounds. In November, 1965, the Henry County Board of Education deeded the tract to the Church, and in November, 1967, the Church deeded the property to Spann. Both deeds recited a consideration of $600. The deed from the Church to Spann was signed by Spann, his brother, Wilbur, and L. C. Cotton, all trustees of the A.M.E. Church.
In its attempt to restore its title to the tract, the Church argued that the deed to Spann was not given for valuable consideration and the approval of the conveyance did not comply with either the A.M.E. Church Discipline or Tit. 10, § 129, of the Alabama Code. To defend his claim to the land, Spann explained that the conveyance from the school board to the Church was only a nominal transaction which was necessary because the school board would not convey real property to individuals. Spann contends that the trustees of the Church had already arranged for a transfer to him when the board granted the tract to the Church and that he assumed and personally repaid a $600 mortgage on the tract to R. E. Phillips.
Our review of this case will consist of the resolution of three issues.[1] First, whether Spann received a valid deed to the land in exchange for valuable consideration. Second, whether the conveyance to' Spann complied with the requirements of Title 10, § 129. Third, whether the provisions of the A.M.E. Discipline regarding alienation of property apply to this case.
The first issue presents purely a factual determination. Spann testified that he became liable on the note and mortgage to Phillips. Several members of the congregation testified that collections had been taken at Church for the repayment of the debt, but other members stated they did not know how the debt was repaid. Phillips testified that he had dealt directly with Spann, that Spann had personally arranged for the $600 loan himself, received the money, and repaid the loan. Although Phillips recalled there were other names on the note, his dealings were solely with Spann. Phillips also testified that Spann paid him in cash. The Church treasurer, L. C. Cotton, testified that he did not know who paid the note to Phillips and no records of the repayment exist.
Cotton further testified that although his name appeared on the deed to Spann, he did not remember deeding the property to Spann and he denied the genuineness of his *1089 signature on the deed. Both the deed to Spann and the note to Phillips were admitted into evidence. Both documents bore Cotton’s name, but he claimed he signed only the note.
The trial Judge had the opportunity to examine both signatures and to hear the irreconcilably conflicting testimony. There is evidence to support the findings that the deed was valid and that Spann paid off the note to Phillips. After a complete review of the record, we are unable to conclude that such findings are plainly and palpably wrong or manifestly unjust; therefore, we must sustain them on this appeal from an ore tenus trial. Sterling Oil of Oklahoma v. Pack, 291 Ala. 727, 287 So.2d 847 (1974).
The second issue is whether the conveyance to Spann complied with Tit. 10, § 129, Code, which reads:
“The trustees or other authorized agents of any church, conference of churches, society or association, or other corporation organized under section 124 of this title, may sell and convey all or such part of the property thereof, real or personal, as they may be authorized to do by resolution of the church, conference of churches, society or association, or other corporation assembled at a regular meeting or special meeting, and if a special meeting, notice of the time, place and object of such meeting must be given at least ten days prior to said special meeting by posting notice at the place of said regular meetings.”
To support his contention that the conveyance complied with the statutory requirement, Spann introduced the minutes of a meeting conducted at the Church on June 16,1967, at which a resolution to convey the land in question to Spann was introduced and passed by a majority of the members. To counter this record, the Church called several members who testified either that they had no recollection of the meeting or that no such meeting occurred. It is impossible for this Court, from the record before us, to sort out the truth in this matter. Several of the witnesses called by the Church seemed confused when cross examined and others had absolutely no meaningful recollection of relevant events or dates even within a range of three to four years.
Once again, we feel constrained to rely upon the ore tenus rule. Since the trial Judge heard the conflicting testimony and observed the demeanor of the witnesses, we will not set aside his judgment if it can be supported by the evidence. We hold that a finding that the meeting reported in the minutes of June 16, 1967, was actually held and a resolution to sell the property was passed is a reasonable inference from the evidence. Therefore, we sustain the finding.
The third issue is whether the A.M.E. Discipline is applicable in this case to prescribe the procedure for a valid conveyance of church property. Section 3 of the A.M.E. Discipline deals with the transfer of local church property. The section was admitted into evidence and reads as follows:
“Laws About Church Property, Etc.
“Transfer of Property
“The Board of Trustees elected by the local church, in the manner provided by the African Methodist Episcopal Discipline, may take such steps to effect a transfer of property, both real and personal, in accordance with the provisions of the Articles of Incorporation of the African Methodist Episcopal Church, provided that such transfer has been approved by resolution in the quarterly conference of said church, and by the trustees of annual conference in which property is located, and of which the presiding Bishop is president.
“Mortgaging and Selling Property
“If and when the property has been incorporated, all such real estate owned or thereafter acquired by the local incor-porators shall be deeded to it in its corporate name.
“1. The said corporation shall have the power to sell, convey, and dispose of property, both real and personal, in fee simple and otherwise.
*1090 “2. The proceeds of such sale shall be in trust for the African Methodist Episcopal Church or disbursed for another improvement of such other properties owned by it or to be purchased by it.
“3. No property shall be sold except with the approval of the quarterly conference by resolution.
“Mortgaging Property
“The Board of Trustees or Incorpora-tors of the church property, elected and organized as prescribed in the Discipline of the African Methodist Episcopal Church, shall have the power to mortgage or encumber property of the charge or corporation for purposes known to be for the best interest of the congregation, provided such action has been authorized by majority vote of the membership present in a Church Conference called for this purpose, notice of such meeting having been given 14 days previously including two Sundays, and subsequently approved by resolution in a regular session of the Quarterly Conference.
“Wherever these laws conflict with the laws of the State in which the property is located, the pastor and trustees shall proceed in a manner to conform with said law.”
It is uncontested, that the conveyance to Spann did not comply with this section. We must, therefore, address the question of the effect of church discipline on conveyances in general and the applicability of this church discipline to the instant conveyance. The effect of church regulations on conveyancing law has not been adjudicated in Alabama. In the case of Goodhope Colored Presbyterian Church v. Lee, 241 Ala. 195, 1 So.2d 911 (1941), the Court was faced with a conveyance from a church in which church regulations were involved, but the Court found that the conveyance complied with the church regulations; therefore, the Court did not reach the question of whether the church regulation could annul an otherwise valid conveyance.
Other states, however, which have addressed this question, have held that church regulations will be given legal effect even if they add to the statutory requirements for conveyancing as long as they do not contravene state law. Geiss v. Trinity Lutheran Church Congregation, 119 Neb. 745, 230 N.W. 658 (1930); Grupe v. Rudisill, 101 N.J.Eq. 145, 136 A. 911 (1927).
It appears that the Alabama Supreme Court was willing to accept this rule in the Lee case if it had been necessary, and we have found no persuasive authority for any contrary rule. Therefore, we adopt the rule for Alabama law.
This general rule, however, does not operate to defeat Spann’s title. To so operate in this case would violate the established law of resulting trust. Here, the local A.M.E. Church served merely as a conduit through which title passed from the Board of Education to Spann. The trial Court heard competent evidence to support the finding that at the time of purchase both parties (Spann and the local Church) understood and agreed that Spann was the true purchaser of the property; that he and not the Church was obligated to pay the consideration ($600) for the property; and that he personally did in fact pay the full amount of the mortgage ($700 including interest). The evidence supports the further finding that the mortgagee (Phillips) recognized that he was dealing with Spann as the true legal title holder.
These facts constitute all the elements of a resulting trust. A clear statement of the rule is found in J. A. Owens & Co. v. Blanks, 225 Ala. 566, 144 So. 35 (1932), as quoted in the later case of Hooks v. Hooks, 258 Ala. 427, 63 So.2d 348 (1953):
“A resulting trust, the holding of title by one with beneficial ownership in another, is a creature of equity, based upon the prima facie presumption that he who pays the whole or an aliquot part of the purchase price for lands becomes the beneficial owner. The doctrine does not rest on an express, but on an implied, agreement, by which the title is taken in the name of another as matter of convenience. No tort or breach of duty is *1091 involved in this form of trust. The conveyance, as made, may be in keeping with the common purpose of all parties. '
“But, in the nature of the case, as often declared, this beneficial ownership must arise at the time of the purchase, when the status of title becomes fixed. Since the trust arises from the payment of purchase money, such payment must ordinarily be made at the time of the purchase.”
Under one version of the facts, which the trial Court was free to find, Spann unquestionably could have legally enforced the equitable remedy of resulting trust absent any conveyance whatsoever to him from the local Church. If these facts would support a legal decree awarding title to Spann under the doctrine of resulting trust absent any conveyance, then, surely, title in Spann could not be defeated by an imperfect conveyance. The trial Court’s decree is supported by the evidence; and, in our opinion, the award of title to the property in question to Spann is plainly and palpably correct.
AFFIRMED.
HEFLIN, C. J., and MERRILL, MADDOX and SHORES, JJ., concur.

. Because all three issues were raised and argued by appellant’s counsel, we have addressed each of them in order to more fully develop the factual context of the controversy. It should be noted, however, that our disposition of the third issue is dispositive of the first two.